2013R00304/CF&JI

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Kevin McNulty |
| | : | Crim. No. 20-572 (KM) |
| v. | : | 18 U.S.C. §§ 371, 666(a)(1)(A), |
| | | 666(a)(1)(B), 981(a)(1)(C), 982(a)(2), 1014, |
| | : | 1341, 1343, 1346, 1349, and 2; 26 U.S.C. |
| | | § 7206(1); and 28 U.S.C. |
| WILLIS EDWARDS III | : | § 2461 |

**SUPERSEDING INDICTMENT**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

**COUNT 1**

(Conspiracy to Defraud Orange of Defendant Edwards's Honest Services and Money and
Property Facilitated by the Use of Interstate Wire Transmissions)

The Defendant

1.      During the time period relevant to Count 1 of this Superseding Indictment:

        A.      Defendant WILLIS EDWARDS III ("defendant EDWARDS") was a

public official in the local government of the City of Orange Township, New Jersey ("Orange").

In or about July 2012, defendant EDWARDS was appointed by the Mayor of Orange as the

Acting Business Administrator. Defendant EDWARDS remained an Orange public official,

holding various titles and functioning for the most part as the Orange Business Administrator,

until on or about December 31, 2015, when his resignation became effective. As an Orange

public official, including during the period from on or about January 1, 2015 to on or about

December 31, 2015, defendant EDWARDS was in a position to take and influence, and did take

and influence, actions taken by and on behalf of Orange.

B.      Orange and its citizens had an intangible right to the honest services of their public officials. As an Orange public official, defendant EDWARDS owed Orange and its citizens a duty to refrain from seeking and receiving bribes and kickbacks in exchange for defendant EDWARDS's official action and influence and for violating his duties as an Orange public official.

<u>Other Individuals and Entities</u>

C.      Franklyn Ore ("Ore") was a friend of defendant EDWARDS. Ore was the principal of Urban Partners LLC ("Urban Partners"), which purported to be a consulting, real estate, and education company, and was the sole signatory of its bank account.

D.      Timur Davis ("Davis") was the Executive Director of the Orange Public Library (the "Library"), a public library serving Orange residents.

E.      The United States Department of Housing and Urban Development ("HUD") was a department of the Executive Branch of the United States Government. HUD's mission was to create strong, sustainable, and inclusive communities and quality affordable homes for low and moderate-income residents. HUD sponsored a Community Development Block Grant ("CDBG") program to disburse grants for local communities to address a range of housing and development issues.

F.      The County of Essex was a county in Northeast New Jersey with a local government that administered all county business (the "County"), including the receipt and disbursement of CDBG funds that the County received from HUD. On or about January 28, 2014, the Orange City Council adopted a resolution authorizing the Mayor of Orange to submit an application to the County for a $50,000 CDBG grant to conduct a Saturday Literacy Program

2

offering tutoring services for low and moderate-income families at the Library (the "Saturday Literacy Program"). On or about June 1, 2014, the County entered into an agreement with Orange and the Library for the use of $50,000 in CDBG funds that had been awarded for the Saturday Literacy Program. Under the terms of the agreement, Orange and the Library were required to cover the initial cost of the Saturday Literacy Program and then submit to the County requests for reimbursement and supporting documentation for their expenditures. The County, after approving such requests for reimbursement, was to draw down and distribute the HUD funding. The agreement also provided that the $50,000 in CBDG funds had to be fully expended not later than May 31, 2015, the termination date of the agreement.

G.    An urban planning company located in Montclair, New Jersey (the "Planning Company") was awarded a $150,000 contract with Orange in or about July 2015. The one-year contract called for the Planning Company to provide professional economic planning services to analyze the conditions within the Central Orange Redevelopment Area (the "Redevelopment Project").

H.    A building located at 395 Main Street in Orange had served as the YWCA. On or about December 1, 2015, the Orange City Council adopted a resolution authorizing the Mayor of Orange to accept a $2.5 million grant from the New Jersey Department of Community Affairs for the purchase and development of that building into a community recreation center (the "YWCA Project").

<u>Defendant EDWARDS's Conspiracy to Defraud Orange</u>

2.    From in or about January 2015 to in or about June 2016, in the District of New Jersey, and elsewhere, defendant

3

WILLIS EDWARDS III

did knowingly and intentionally conspire and agree with others to devise a scheme and artifice to

defraud Orange of: (a) the right to defendant EDWARDS's honest services as an Orange public

official and (b) money and property, in connection with: (1) the Saturday Literacy Program; (2)

the Redevelopment Project; and (3) the YWCA Project, by means of materially false and

fraudulent pretenses, representations, and promises, and for the purpose of executing such

scheme and artifice, to transmit and cause to be transmitted by means of wire, radio, and

television communications in interstate commerce certain writings, signs, signals, pictures, and

sounds, contrary to Title 18, United States Code, Sections 1343 and 1346.

### The Object of the Conspiracy

3.      The object of this conspiracy was for defendant EDWARDS and Ore, through the

use of Urban Partners, to obtain money and property from Orange by means of materially false

and fraudulent pretenses, and to funnel to defendant EDWARDS a stream of concealed

kickbacks in exchange for defendant EDWARDS's official action and assistance in the affairs of

Orange and in violation of his official duties, facilitated by the use of interstate wire

transmissions.

### The Saturday Literacy Program Fraud and Kickbacks

4.      It was part of the conspiracy that:

A.      In or about January 2015, at defendant EDWARDS's instruction, Ore

formed Urban Partners, using cash provided by defendant EDWARDS.

B.      In or about March 2015, in his capacity as an Orange public official,

defendant EDWARDS caused a false and fraudulent voucher and phony supporting documents

4

to be submitted to the County seeking payment in the amount of $32,331 (the "March 2015 voucher"). Of the $32,331 claimed in the March 2015 voucher, $23,000 was to reimburse the Library for payments purportedly made to Urban Partners for services allegedly rendered in connection with the Saturday Literacy Program. At the time that defendant EDWARDS caused the March 2015 voucher to be submitted to the County, defendant EDWARDS knew that Urban Partners had not provided such services. Among the fraudulent documents submitted in support of the March 2015 voucher were:

    i.    A sham contract between Urban Partners and the Library, backdated to June 30, 2014—over six months before Urban Partners had been formed—stating that Urban Partners agreed to provide a forty-week literacy program on Saturdays from in or about July 2014 to in or about June 2015;

    ii.    Falsified reports purporting to contain statistical data about the children who supposedly attended the literacy sessions;

    iii.    Fraudulent invoices, backdated to August 29, 2014, October 31, 2014, and November 28, 2014, seeking payment of $8,000, $8,000, and $7,000, respectively, to Urban Partners for purportedly conducting the Saturday Literacy Program; and

    iv.    Library checks payable to Urban Partners, backdated to September 5, 2014, November 3, 2014, and December 5, 2014, in the amounts of $8,000, $8,000, and $7,000, respectively—all purportedly issued on dates before Urban Partners had been formed, and none of which had been negotiated when submitted to the County—to give the false impression that the Library already had paid these funds to Urban Partners, when it had not done so.

    C.    On or about March 30, 2015, based on the March 2015 voucher and phony documents in support of the voucher, the County electronically transmitted a request, utilizing a HUD system with a server outside of New Jersey, to draw down approximately $30,998 in CDBG funds for the Saturday Literacy Program.

D.    In or about May 2015, defendant EDWARDS took further action as an Orange public official by causing a second false and fraudulent voucher, signed by Davis, and phony supporting documents to be submitted to the County. The voucher sought payment of $19,002 to reimburse the Library for payments purportedly made to Urban Partners for services allegedly rendered in connection with the Saturday Literacy Program (the "May 2015 voucher"). At the time that the May 2015 voucher was submitted to the County, defendant EDWARDS, Ore, and Davis knew that Urban Partners had not provided such services. Among the fraudulent documents submitted in support of the May 2015 voucher were:

i.    A fraudulent invoice seeking payment of $19,002 to Urban Partners for purportedly conducting the Saturday Literacy Program;

ii.    Falsified reports purporting to contain statistical data about the children who supposedly attended the literacy sessions; and

iii.    Three Library checks payable to Urban Partners—none of which had been negotiated when submitted to the County—each dated May 15, 2015 and each in the amount of $6,334, to give the false impression that the Library already had paid these funds to Urban Partners, when it had not done so.

E.    On or about May 28, 2015, based on the May 2015 voucher and phony documents in support of the voucher, the County electronically transmitted a request, utilizing a HUD system with a server outside of New Jersey, to draw down approximately $19,002 in CDBG funds for the Saturday Literacy Program.

F.    Between in or about April 2015 and in or about June 2015, the County provided the Library with $50,000 in CDBG funds for the Saturday Literacy Program that the County obtained from HUD.

G.    Between in or about May 2015 and in or about August 2015, defendant EDWARDS caused the Library to pay Urban Partners approximately $36,000, despite knowing

6

that Urban Partners had not provided the Library with services in connection with the Saturday

Literacy Program. During that time, the Library paid Urban Partners via five checks (the "five

checks"), which defendant EDWARDS provided to Ore, who deposited them in Urban Partners'

bank account in New Jersey.

        H.      Between in or about May 2015 and in or about August 2015, at defendant

EDWARDS's direction, defendant EDWARDS received from Ore a substantial amount of the

proceeds of the five checks. Defendant EDWARDS obtained these kickbacks in exchange for his

official action and assistance and violation of his official duties as an Orange public official in

connection with the Saturday Literacy Program. At defendant EDWARDS's direction, Ore also

provided a portion of the proceeds of the five checks to an associate of defendant EDWARDS

("Individual 1"). Ore spent the remaining proceeds of the five checks for his own personal

benefit including, among other things, for entertainment and restaurants.

The Redevelopment Project Fraud and Kickbacks

     5.      It was a further part of the conspiracy that:

        A.      In or about June 2015, in his capacity as an Orange public official,

defendant EDWARDS approved and caused to be approved the issuance of a $150,000 blanket

purchase order for the Planning Company in connection with the Redevelopment Project.

        B.      In or about July 2015, defendant EDWARDS used his influence as an

Orange public official to arrange for the Planning Company to hire Urban Partners to work on

the Redevelopment Project.

        C.      On or about July 13, 2015, after defendant EDWARDS had already told

Ore that Urban Partners would be receiving a contract with the Planning Company for a

7

determined amount, Ore signed a professional services agreement on behalf of Urban Partners

with the Planning Company. The agreement provided that: (a) Urban Partners would provide

services in connection with the Redevelopment Project and (b) the Planning Company would pay

Urban Partners $50,000 per year for three years, conditioned on the Planning Company's "prior

receipt of funds from" Orange.

      D.     Between in or about August 2015 and in or about February 2016, pursuant

to Urban Partners' agreement with the Planning Company, Ore provided services to the Planning

Company in connection with the Redevelopment Project, for which Ore submitted invoices to

the Planning Company, including, among others, the following:

        i.    On or about August 19, 2015, Ore sent an email to the Planning Company, using a server located outside of New Jersey, transmitting an Urban Partners invoice for approximately $4,160 in connection with the Redevelopment Project;

      ii.    On or about August 28, 2015, Ore sent an email to the Planning Company, using a server located outside of New Jersey, transmitting an Urban Partners invoice for approximately $4,160 in connection with the Redevelopment Project; and

    iii.    On or about October 15, 2015, Ore sent an email to the Planning Company, using a server located outside of New Jersey, transmitting an Urban Partners invoice for approximately $4,160 in connection with the Redevelopment Project.

      E.     Between in or about August 2015 and in or about February 2016, the

Planning Company, which was receiving payments from Orange for services provided in

connection with the Redevelopment Project, paid Urban Partners approximately $33,220 (the

"$33,220"), pursuant to their agreement.

      F.     Between in or about August 2015 and in or about February 2016, at

defendant EDWARDS's direction, defendant EDWARDS received from Ore a substantial

amount of the $33,220 in exchange for defendant EDWARDS's official action and assistance and violation of his official duties in connection with the Redevelopment Project. At defendant EDWARDS's direction, Ore also provided a portion of the $33,220 to Individual 1.

G.      On or about May 27, 2016, after receiving payments from Orange for services provided in connection with the Redevelopment Project, the Planning Company paid Urban Partners approximately $4,160, pursuant to their agreement.

H.      On or about June 15, 2016, in Essex County, knowing that Urban Partners had received a payment from the Planning Company, defendant EDWARDS sought and received from Ore an approximately $2,000 cash payment in exchange for defendant EDWARDS's past official action and assistance and violation of his duties as an Orange public official in connection with the Redevelopment Project.

<u>The YWCA Project Fraud and Kickback</u>

6.      It was further part of the conspiracy that:

A.      In or about December 2015, aware that his resignation as an Orange public official would become effective on December 31, 2015, defendant EDWARDS took further steps to use his position as an Orange public official for corrupt and fraudulent purposes. At or about that time, defendant EDWARDS advised Ore, in substance, that defendant EDWARDS had access to Orange discretionary funds and that defendant EDWARDS wanted to utilize those funds before the end of the year.

B.      On or about December 22, 2015, at defendant EDWARDS's direction, Ore generated and submitted a fraudulent invoice from Urban Partners to Orange, billing Orange

$16,800 for purported "Project Management oversight" services related to the YWCA Project, when defendant EDWARDS and Ore knew that no such services had been rendered.

C.     On or about December 23, 2015, in his capacity as an Orange public official, defendant EDWARDS approved and caused to be approved the issuance of a Purchase Order for the payment of $16,800 to Urban Partners for purported "YWCA PROJ[ECT] MANAGEMENT OVERSIGHT" services, when defendant EDWARDS and Ore knew that no such services had been rendered.

D.     On or about December 28, 2015, an employee in Orange's Finance Department sent Ore an email, using a server located outside of New Jersey, requesting that Ore sign and return a Purchase Order that authorized payment for the fraudulent $16,800 voucher.

E.     On or about December 28, 2015, defendant EDWARDS and Ore caused Orange to issue a check in the amount of $16,800 payable to Urban Partners for services purportedly, but not actually, rendered by Urban Partners in connection with the YWCA Project. On or about the same date, Ore deposited that check in Urban Partners' bank account.

F.     On or about December 29, 2015, Ore sent an email to the Orange Finance Department, utilizing a server located outside of New Jersey, attached to which was a Purchase Order, signed by Ore, falsely certifying that Urban Partners' invoice for $16,800 was correct and that the services had been provided as claimed in the Purchase Order.

G.     On or about December 30, 2015, in Essex County, at defendant EDWARDS's direction, defendant EDWARDS received from Ore a substantial amount of the $16,800 payment fraudulently obtained from Orange in exchange for defendant EDWARDS's official action and assistance and violation of his duties as an Orange public official in

10

connection with the YWCA Project.

In violation of Title 18, United States Code, Section 1349.

## COUNTS 2 to 8

### (Wire Fraud in Connection with the Saturday Literacy Program, Redevelopment Project, and YWCA Project)

1.       The allegations set forth in Paragraphs 1 and 4 through 6 of Count 1 of this

Superseding Indictment are realleged and incorporated by reference as though fully set forth

herein.

2.       On or about the dates alleged herein, in the District of New Jersey and elsewhere,

defendant

### WILLIS EDWARDS III

and others knowingly did devise and intend to devise a scheme and artifice to defraud Orange of:

(a) the right to defendant EDWARDS's honest services as an Orange public official and (b)

money and property, in connection with: (1) the Saturday Literacy Program; (2) the

Redevelopment Project; and (3) the YWCA Project, by means of materially false and fraudulent

pretenses, representations, and promises and through the use of Urban Partners.

3.       On or about the dates listed below, in the District of New Jersey and elsewhere,

for the purposes of executing and attempting to execute this scheme and artifice to defraud,

defendant

### WILLIS EDWARDS III

knowingly and intentionally did transmit and cause to be transmitted by means of wire, radio and

television communications in interstate commerce, certain writings, signs, signals, pictures and

sounds, as listed below:

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| 2 | March 30, 2015 | Based on the March 2015 voucher and phony documents in support of the voucher, the County electronically |

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| | | transmitted a request, utilizing a HUD system with a server outside of New Jersey, to draw down approximately $30,998 in CDBG funds for the Saturday Literacy Program. |
| 3 | May 28, 2015 | Based on the May 2015 voucher and phony documents in support of the voucher, the County electronically transmitted a request, utilizing a HUD system with a server outside of New Jersey, to draw down approximately $19,002 in CDBG funds for the Saturday Literacy Program. |
| 4 | August 19, 2015 | Ore sent an email to the Planning Company, using a server located outside of New Jersey, transmitting an Urban Partners invoice for approximately $4,160 in connection with the Redevelopment Project. |
| 5 | August 28, 2015 | Ore sent an email to the Planning Company, using a server located outside of New Jersey, transmitting an Urban Partners invoice for approximately $4,160 in connection with the Redevelopment Project. |
| 6 | October 15, 2015 | Ore sent an email to the Planning Company, using a server located outside of New Jersey, transmitting an Urban Partners invoice for approximately $4,160 in connection with the Redevelopment Project. |
| 7 | December 28, 2015 | Following defendant EDWARDS's approval of the issuance of a Purchase Order for $16,800, an Orange employee emailed Ore, using a server located outside of New Jersey, requesting that he sign a Purchase Order to pay Urban Partners $16,800 for services purportedly rendered in connection with the YWCA Project. |
| 8 | December 29, 2015 | Ore emailed an Orange employee, using a server located outside of New Jersey, a Purchase Order to pay Urban Partners $16,800 for services purportedly rendered in connection with the YWCA Project. |

In violation of Title 18, United States Code, Sections 1343 and 1346 and Section 2.

## COUNT 9

### (Unlawfully Obtaining $5,000 and More in Connection with the Saturday Literacy Program)

1.      Paragraphs 1A, 1C through 1F, and 4 of Count 1 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      During the time period relevant to Count 9 of this Superseding Indictment:

A.      defendant EDWARDS was an agent of Orange and an agent of the Library with respect to the Saturday Literacy Program grant, and Davis was an agent of the Library, within the meaning of Title 18, United States Code, Section 666(d)(1); and

B.      Orange and the Library each received benefits in excess of $10,000 under Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of Federal assistance within the relevant 12-month time period, within the meaning of Title 18, United States Code, Sections 666(b) and 666(d)(5).

3.      Between in or about January 2015 and in or about August 2015, in the District of New Jersey and elsewhere, defendant

WILLIS EDWARDS III

did knowingly embezzle, steal, obtain by fraud, and otherwise without authority convert to the use of persons other than the rightful owner and intentionally misapply money valued at $5,000 and more, owned by, and under the care, custody, and control of, Orange and the Library in connection with the Saturday Literacy Program.

In violation of Title 18, United States Code, Section 666(a)(1)(A) and Section 2.

14

## COUNT 10

### (Unlawfully Obtaining $5,000 and More in Connection with the YWCA Project)

1.      Paragraphs 1A, 1C, 1H, and 6 of Count 1 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      During the time period relevant to Count 10 of this Superseding Indictment:

        A.      defendant EDWARDS was an agent of Orange, within the meaning of Title 18, United States Code, Section 666(d)(1); and

        B.      Orange received benefits in excess of $10,000 under Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of Federal assistance within the relevant 12-month time period, within the meaning of Title 18, United States Code, Sections 666(b) and 666(d)(5).

3.      In or about December 2015, in the District of New Jersey and elsewhere, defendant

WILLIS EDWARDS III

did knowingly embezzle, steal, obtain by fraud, and otherwise without authority convert to the use of persons other than the rightful owner and intentionally misapply money valued at $5,000 and more, owned by, and under the care, custody, and control of, Orange in connection with the YWCA Project.

        In violation of Title 18, United States Code, Section 666(a)(1)(A) and Section 2.

15

## COUNT 11

(Bribery in Connection with the Saturday Literacy Program)

1.      Paragraphs 1A, 1C through 1F, and 4 of Count 1 and Paragraph 2 of Count 9 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      Between in or about January 2015 and in or about August 2015, in the District of New Jersey and elsewhere, defendant

WILLIS EDWARDS III

did knowingly and corruptly solicit, demand, accept, and agree to accept from Ore cash payments in the aggregate amounts of $5,000 and more, intending to be influenced and rewarded in connection with a business, a transaction, and a series of transactions of Orange and the Library involving a thing of value of $5,000 and more, namely, the Saturday Literacy Program.

In violation of Title 18, United States Code, Section 666(a)(1)(B) and Section 2.

## COUNTS 12 to 13

### (Bribery in Connection with the Redevelopment Project and the YWCA Project)

1.        Paragraphs 1A, 1C, 1G, 1H, 5, and 6 of Count 1 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.        During the time periods relevant to Counts 12 and 13 of this Superseding Indictment:

A.        defendant EDWARDS was an agent of Orange, within the meaning of Title 18, United States Code, Section 666(d)(1); and

B.        Orange received benefits in excess of $10,000 under Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of Federal assistance within the relevant 12-month time periods, within the meaning of Title 18, United States Code, Sections 666(b) and 666(d)(5).

3.        In or about the dates set forth below, in the District of New Jersey and elsewhere, defendant

WILLIS EDWARDS III

did knowingly and corruptly solicit, demand, accept, and agree to accept from Ore cash payments in the aggregate amounts of $5,000 and more, intending to be influenced and rewarded in connection with a business, a transaction, and a series of transactions of Orange involving a thing of value of $5,000 and more, as set forth below:

| COUNT | DATES | BUSINESS/TRANSACTION OF ORANGE |
|-------|-------|-------------------------------|
| 12 | August 2015 to June 2016 | The Redevelopment Project |
| 13 | December 2015 | The YWCA Project |

17

In violation of Title 18, United States Code, Section 666(a)(1)(B) and Section 2.

## COUNT 14

(Conspiracy to Defraud Orange of Defendant Edwards's Honest Services Facilitated by the Use of Interstate Wire Transmissions in Connection with the Municipal Complex Project)

1.    Paragraphs 1A and 1B of Count 1 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    During the time period relevant to Count 14 of this Superseding Indictment:

A.    Jeanmarie Zahore ("Zahore"), an associate of defendant EDWARDS, was the sole owner of JZ Nettech, a computer consulting business, which he operated out of his residence in Rahway, New Jersey.

B.    A municipal complex located in Orange on Park Street housed the Orange Municipal Court and the Orange Police Department (the "Municipal Complex").

C.    On or about September 15, 2015, the Orange City Council passed a resolution awarding JZ Nettech a $350,000 emergency contract to install a computer networking system at the Municipal Complex (the "Municipal Complex Project").   The term of the contract was from on or about September 16, 2015 through on or about September 15, 2016.

Defendant EDWARDS's Conspiracy to Defraud Orange
in Connection with the Municipal Complex Project

3.    Between in or about August 2015 and in or about November 2015, in the District of New Jersey, and elsewhere, defendant

WILLIS EDWARDS III

did knowingly and intentionally conspire and agree with Zahore to devise a scheme and artifice to defraud Orange of the right to defendant EDWARDS's honest services as an Orange public official in connection with the Municipal Complex Project, by means of materially false and

fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire, radio, and television communications in interstate commerce certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Sections 1343 and 1346.

### The Object of the Conspiracy

4.      The object of this conspiracy was for defendant EDWARDS to receive concealed kickbacks from Zahore as a reward for defendant EDWARDS's official action and assistance in the affairs of Orange and in violation of his official duties, facilitated by the use of interstate wire transmissions.

5.      It was part of the conspiracy that, between in or about August 2015 and in or about November 2015, defendant EDWARDS, in his official capacity as an Orange public official, gave favorable treatment to Zahore and JZ Nettech in connection with the Municipal Complex Project, and defendant EDWARDS agreed to receive and did receive two cash payments from Zahore, each in the amount of approximately $10,000, as a reward for defendant EDWARDS's favorable treatment, as described below:

A.      On or about August 31, 2015, defendant EDWARDS and Zahore exchanged the following text messages:

| SOURCE | TEXT MESSAGE |
|---|---|
| Zahore's Cell Phone | Hey Willis, I trust all is well. We played phone tag a couple of times. Let me know what time is good for me to come by your office today or tomorrow. Jean Z. |
| Defendant EDWARDS's Cell Phone | Tomorrow at 2 my office is that ok? |

| SOURCE | TEXT MESSAGE |
|---|---|
| Zahore's Cell Phone | Yes, it is. See you tomorrow. Thanks |

B.  On or about September 3, 2015, defendant EDWARDS and Zahore exchanged the following text messages:

| SOURCE | TEXT MESSAGE |
|---|---|
| Zahore's Cell Phone | On my way |
| Defendant EDWARDS's Cell Phone | Meet me at city hall my office |
| Zahore's Cell Phone | In Orange? |
| Defendant EDWARDS's Cell Phone | Yes |

C.  On or about September 14, 2015, at a meeting at the Municipal Complex, defendant EDWARDS advised a senior official of the Orange Municipal Court (the "Court Official") and a senior official of the Orange Police Department (the "Police Department Official") that: (a) there was an urgent need to address a potential security vulnerability in the Municipal Complex's computer network, and (b) JZ Nettech had been selected as the vendor to fix the problem.  That same day, defendant EDWARDS caused Orange to issue a Certification of Funds, certifying that $350,000 was available for the Municipal Complex Project and identifying the vendor as JZ Nettech.

D.  On or about September 14, 2015, defendant EDWARDS and Zahore exchanged the following text messages:

21

| SOURCE | TEXT MESSAGE |
|---|---|
| Zahore's Cell Phone | Let me know what time you will be home. I probably can stop by tonight. |
| Defendant EDWARDS's Cell Phone | K |
| Defendant EDWARDS's Cell Phone | I'm finish with my meeting where are you |
| Zahore's Cell Phone | I am in Union. Where do want to meet? |
| Defendant EDWARDS's Cell Phone | My house |
| Zahore's Cell Phone | Ok. See you there in 25mins |

E.      On or about September 15, 2015, defendant EDWARDS received an email from Zahore, thanking defendant EDWARDS for sending him a Political Contribution Disclosure Form that Orange vendors were required to complete.

F.      On or about September 15, 2015, defendant EDWARDS and Zahore exchanged the following text messages:

| SOURCE | TEXT MESSAGE |
|---|---|
| Zahore's Cell Phone | On my way to your office to drop off the document. |
| Defendant EDWARDS's Cell Phone | K, see [an Orange employee who reported to defendant EDWARDS] |
| Zahore's Cell Phone | Will do |
| Defendant EDWARDS's Cell Phone | Urgent! Need business Regerstration |
| Zahore's Cell Phone | Am driving will fax it over soon |
| Zahore's Cell Phone | Are you still in the office? |

22

| SOURCE | TEXT MESSAGE |
|---|---|
| Defendant EDWARDS's Cell Phone | Yes |
| Zahore's Cell Phone | I am on my way |
| Defendant EDWARDS's Cell Phone | Ok |

G.      On or about September 15, 2015, as defendant EDWARDS had directed, Zahore submitted documentation to Orange to be able to obtain the contract for the Municipal Complex Project including, a Political Contribution Disclosure Form and a Business Registration Certificate.   That same day, defendant EDWARDS spoke before the Orange City Council in support of allocating emergency funds for the Municipal Complex Project and awarding the Municipal Complex Project to JZ Nettech.   The Court Official and the Police Department Official also addressed the Orange City Council, relying on information that defendant EDWARDS had provided to them.   At the meeting, during which Orange City Council members raised questions about the selection of JZ Nettech as the vendor for the Municipal Complex Project, defendant EDWARDS did not disclose that he had engaged in communications with Zahore since at least on or about August 31, 2015.

H.      On or about September 15, 2015, after the Orange City Council had awarded the $350,000 emergency contract, without competitive bidding, to JZ Nettech, defendant EDWARDS and Zahore exchanged the following text messages:

| SOURCE | TEXT MESSAGE |
|---|---|
| Defendant EDWARDS's Cell Phone | I Need to see you ASAP!! |

| SOURCE | TEXT MESSAGE |
|---|---|
| Zahore's Cell Phone | What is going on? I will stop by the office in the am |

I.      On or about September 16, 2015, defendant EDWARDS and Zahore exchanged the following text messages:

| SOURCE | TEXT MESSAGE |
|---|---|
| Defendant EDWARDS's Cell Phone | Can you meet me at my place at 8am? |
| Zahore's Cell Phone | What is the room#? |
| Defendant EDWARDS's Cell Phone | 3167 |
| Zahore's Cell Phone | I am here |
| Zahore's Cell Phone | I just missed you |
| Defendant EDWARDS's Cell Phone | Come upstairs to rm 4154 |
| Zahore's Cell Phone | Ok |

J.      On or about September 16, 2015, defendant EDWARDS approved and caused to be approved the issuance of a blanket purchase order authorizing Orange to pay JZ Nettech $350,000 in connection with the Municipal Complex Project.

K.      On or about September 17, 2015, defendant EDWARDS and Zahore exchanged the following text messages:

| SOURCE | TEXT MESSAGE |
|---|---|
| Zahore's Cell Phone | Hey Willis.   How r u? [An employee in Orange's Finance Department ("Orange |

24

| SOURCE | TEXT MESSAGE |
|---|---|
|  | Employee 1")] is requesting an invoice already should I give   something? |
| Zahore's Cell Phone | Or should I make one and give it to you? |
| Defendant EDWARDS's Cell Phone | When can you meet? |
| Zahore's Cell Phone | Yes |
| Defendant EDWARDS's Cell Phone | When can you meet? |
| Zahore's Cell Phone | 12:30pm |
| Zahore's Cell Phone | In your office? |
| Defendant EDWARDS's Cell Phone | Essex County |
| Zahore's Cell Phone | Ok |
| Zahore's Cell Phone | I am at ECC. Where r u? |

L.      On or about September 17, 2015, Zahore sent an email to Orange Employee 1, using a server located outside of New Jersey, attached to which was a JZ Nettech "invoice related to the 1st stage of the project" seeking a payment from Orange of $115,000.

M.      On or about September 17, 2015, defendant EDWARDS received a text message from Zahore, stating, "I sent [the JZ Nettech invoice for $115,000] to [Orange Employee 1]. Do you want a copy sent to u?"

N.      On or about September 18, 2015, Zahore sent an email to Orange Employee 1, using a server located outside of New Jersey, attached to which was a revised JZ Nettech invoice, still seeking a payment of $115,000 from Orange, but now indicating that approximately $34,460 of the $115,000 was for the "Purchase of wiring for buildings."   Also on

or about September 18, 2015, defendant EDWARDS and Zahore exchanged the following text messages:

| SOURCE | TEXT MESSAGE |
|---|---|
| Zahore's Cell Phone | How r u today? R u in the office today? I plan to come by.. |
| Defendant EDWARDS's Cell Phone | Yes |
| Zahore's Cell Phone | Ok. I am on my way. |

O.      On or about September 18, 2015, at defendant EDWARDS's direction, the Police Department Official signed and approved a purchase order for the payment of $115,000 to JZ Nettech for the "PURCH[ASE] OF WIRING/CABLE/SUPPLIES" for the Municipal Complex Project.   Typically, vendors are not pre-paid by Orange to purchase supplies for a project.   Thereafter, the Police Department Official gave updates to defendant EDWARDS about the progress of the Municipal Complex Project.

P.      On or about September 18, 2015, Zahore received a check in the amount of $115,000 issued by Orange and payable to JZ Nettech in connection with the Municipal Complex Project (the "$115,000 Orange check").   Zahore deposited the $115,000 Orange check in a bank account in the name of Zahore "DBA JZ NETTECH" (the "JZ Nettech bank account") on or about the same date.

Q.      On or about September 19, 2015, defendant EDWARDS and Zahore went out together at night to celebrate the award of the $350,000 emergency contract to JZ Nettech for the Municipal Complex Project.

26

R.      On more than one occasion, from shortly after Zahore received the
$115,000 Orange check on or about September 18, 2015 to in or about November 2015,
defendant EDWARDS told Zahore, in substance, that defendant EDWARDS had taken care of
Zahore and that Zahore should consider that and do something.

S.      On or about October 7, 2015, Zahore sent an email to Orange Employee 1,
using a server located outside of New Jersey, attached to which was a Purchase Order that
Zahore had signed calling for a payment of $140,000 from Orange in connection with the
Municipal Complex Project.

T.      On or about October 9, 2015, Zahore deposited a check in the amount of
$140,000 issued by Orange and payable to JZ Nettech in connection with the Municipal
Complex Project in the JZ Nettech bank account at a bank branch in New Jersey.

U.      On or about November 9, 2015, Zahore sent an email to Orange Employee
1, using a server located outside of New Jersey, attached to which was a JZ Nettech invoice
seeking a payment of $95,000 from Orange in connection with the Municipal Complex Project.

V.      On or about November 10, 2015, Zahore deposited a check in the amount
of $95,000 issued by Orange and payable to JZ Nettech in connection with the Municipal
Complex Project in the JZ Nettech bank account at a bank branch in New Jersey.

W.      In or about November 2015, while in New Jersey, following defendant
EDWARDS's multiple solicitations and demands for payment from Zahore, defendant
EDWARDS received approximately $10,000 in cash from Zahore as a reward for defendant
EDWARDS's favorable treatment of Zahore and JZ Nettech in connection with the Municipal
Complex Project.   Upon receipt of that cash payment of approximately $10,000, which was

funded in substantial part by money paid by Orange to JZ Nettech, defendant EDWARDS expressed his dissatisfaction to Zahore with the amount of the payment.

      X.     Subsequently, in or about November 2015, while in New Jersey, defendant EDWARDS received a second payment of approximately $10,000 in cash from Zahore as a reward for defendant EDWARDS's favorable treatment of Zahore and JZ Nettech in connection with the Municipal Complex Project.   That payment also was funded in substantial part by money paid by Orange to JZ Nettech.

      Y.     In a spreadsheet that Zahore maintained of expenses related to the Municipal Complex Project, Zahore characterized the two above-referenced cash payments to defendant EDWARDS, referring to defendant EDWARDS by his initials, as follows:

| 11/20/2015 | Gift: WE | $10,000.00 |
|---|---|---|

| 11/23/2015 | Gift: WE | $10,000.00 |
|---|---|---|

In violation of Title 18, United States Code, Section 1349.

## COUNT 15

### (Wire Fraud in Connection with the Municipal Complex Project)

1.      Paragraphs 1A and 1B of Count 1 and Paragraphs 2 and 5 of Count 14 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      Between in or about August 2015 and in or about November 2015, in the District of New Jersey and elsewhere, defendant

WILLIS EDWARDS III

and Zahore knowingly did devise and intend to devise a scheme and artifice to defraud Orange of the right to defendant EDWARDS's honest services as an Orange public official in connection with the Municipal Complex Project, by means of materially false and fraudulent pretenses, representations, and promises.

3.      On or about November 9, 2015, in the District of New Jersey and elsewhere, for the purposes of executing and attempting to execute this scheme and artifice to defraud, defendant

WILLIS EDWARDS III

knowingly and intentionally did transmit and cause to be transmitted by means of wire, radio and television communications in interstate commerce, certain writings, signs, signals, pictures and sounds, namely, Zahore's email to Orange Employee 1, using a server located outside of New Jersey, attached to which was a JZ Nettech invoice seeking a payment of $95,000 from Orange in connection with the Municipal Complex Project.

29

In violation of Title 18, United States Code, Sections 1343 and 1346, and Section

2.

30

## COUNT 16

### (Accepting Corrupt Payments in Connection with the Municipal Complex Project)

1.      Paragraph 1A of Count 1 and Paragraphs 2 and 5 of Count 14 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      During the time period relevant to Count 16 of this Superseding Indictment:

A.      Defendant EDWARDS was an agent of Orange within the meaning of Title 18, United States Code, Section 666(d)(1); and

B.      Orange received benefits in excess of $10,000 under Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of Federal assistance within the relevant 12-month time period, within the meaning of Title 18, United States Code, Sections 666(b) and 666(d)(5).

3.      Between in or about August 2015 and in or about November 2015, in the District of New Jersey and elsewhere, defendant

WILLIS EDWARDS III

did knowingly and corruptly solicit, demand, accept, and agree to accept from Zahore cash payments in the aggregate amounts of $5,000 and more, intending to be influenced and rewarded in connection with a business, a transaction, and a series of transactions of Orange involving a thing of value of $5,000 and more, namely, the Municipal Complex Project.

In violation of Title 18, United States Code, Section 666(a)(1)(B) and Section 2.

## COUNT 17

### (Conspiracy to Commit Mail Fraud and Wire Fraud in Connection with the Plagiarism Scheme)

1. Paragraph 1A of Count 1 and Paragraph 5K of Count 14 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2. During the time period relevant to Count 17 of this Superseding Indictment:

      A. Defendant EDWARDS was enrolled as a graduate student at a university in New Jersey ("University 1").

      B. Individual 2, who resided in Georgia, was a consultant whose sister ("Individual 2's sister" and "his sister") was enrolled with defendant EDWARDS in a graduate program at University 1. With the knowledge and assistance of Individual 2's sister, Individual 2 had academic papers written for defendant EDWARDS, who plagiarized them and passed them off as his own work to professors at University 1 (the "Plagiarism Scheme").

3. From in or about June 2015 to in or about June 2016, in the District of New Jersey, and elsewhere, defendant

WILLIS EDWARDS III

did knowingly and intentionally conspire and agree with others to devise a scheme and artifice to defraud Orange of money and property in connection with the Plagiarism Scheme, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to use and cause to be used the U.S. mail, and to transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1341 and Section 1343.

Object of the Conspiracy

4.      The object of this conspiracy was for defendant EDWARDS and Individual 2 to

obtain money and property from Orange through the submission of fraudulent invoices to pay

Individual 2 for having academic papers written for defendant EDWARDS's graduate program

at University 1 and to facilitate that scheme through the use of the U.S. mail and interstate and

foreign wire transmissions.

The Plagiarism Scheme Fraud

5.      It was part of the conspiracy that:

A.      On or about June 22, 2015, at his sister's request, Individual 2

communicated with defendant EDWARDS about providing assistance to defendant EDWARDS

in connection with his course work for a graduate program at University 1.

B.      On or about July 2, 2015, Individual 2 sent defendant EDWARDS an

email, attached to which was a two-page "Statement of Purpose" for defendant EDWARDS's

Dissertation Proposal for his course work at University 1. Individual 2 had arranged for an

associate to write the "Statement of Purpose" for defendant EDWARDS. On or about the same

date, Individual 2 forwarded to his sister the email that Individual 2 had sent to defendant

EDWARDS, attached to which was the "Statement of Purpose." Individual 2's sister emailed

Individual 2 in response, stating, in pertinent part, "Great: Much better than Mines. lol! (I got to

start paying for good stuff ha! lol!)." Shortly afterward, Individual 2 sent an email to his sister,

stating, in pertinent part, "He [defendant EDWARDS] has to pay 28-30K for the entire

document.I can give you something good out of this deal."

33

C.    On or about July 13, 2015, defendant EDWARDS received a text message from Individual 2 stating, in substance, that an associate of Individual 2 would write certain academic papers for defendant EDWARDS at the price of between $8,500 and $10,000. Defendant EDWARDS sent a text message to Individual 2, responding, in substance, that defendant EDWARDS could "not commit to the financial requirement at this time under [his] current financial obligations." Later that same day, defendant EDWARDS sent a text message to Individual 2, introducing the idea of having Individual 2 do consulting work for Orange. While Individual 2 thereafter did some work for Orange, defendant EDWARDS and Individual 2 fraudulently used invoices submitted by Individual 2, as described below, to dupe Orange into making payments, which were, at least in part, in exchange for academic papers that Individual 2 arranged to have written for defendant EDWARDS.

D.    During the period from in or about September 2015 to in or about November 2015, Individual 2, with his sister's assistance, communicated with various associates about writing academic papers for defendant EDWARDS. During that same period, defendant EDWARDS communicated with Individual 2 and his sister about defendant EDWARDS's assignments for his courses at University 1.

E.    On or about November 29, 2015, defendant EDWARDS received an email from Individual 2, attached to which were several papers that Individual 2 had arranged to have written for defendant EDWARDS's courses at University 1. In the email, Individual 2 referred to defendant EDWARDS's Dissertation Proposal as "[t]he 30 page proposal." Individual 2 had arranged for an associate to write the Dissertation Proposal for defendant EDWARDS (the

"Dissertation Proposal written for defendant EDWARDS"), which Individual 2 indicated in the email would "be dispatched to [defendant EDWARDS] shortly."

        F.      On or about December 1, 2015, defendant EDWARDS received an email from Individual 2, referring to the Dissertation Proposal written for defendant EDWARDS as "the 30 page project." The subject line of the email stated, "Re: 30 Page Project Invoice." Defendant EDWARDS was informed by that email that "the 30 page project is ready to be submitted . . . . Let me know when I should submit an invoice (\$ 12,000) so that it can be delivered." On or about the same day, Individual 2 sent an email to Orange Employee 1, who worked in Orange's Finance Department, using a server located outside of New Jersey, attaching a fraudulent invoice seeking the payment of \$12,000 for purported "Project Advisory [services] for ORANGE REC" for "(1) month October 1, 2015 to October 31, 2015."

        G.      On or about December 8, 2015, in his capacity as an Orange public official, defendant EDWARDS approved and caused to be approved the issuance of a Purchase Order for the payment of \$12,000 to Individual 2 for services purportedly provided to Orange, when defendant EDWARDS and Individual 2 knew that the \$12,000 sought was, at least in part, for papers written for defendant EDWARDS for his graduate program at University 1, including the Dissertation Proposal written for defendant EDWARDS.

        H.      On or about December 9, 2015, defendant EDWARDS sent a text message that was transmitted in foreign commerce to Individual 2, who was then outside the United States, attached to which was a photo of a document reflecting that Orange had issued a \$12,000 check to Individual 2, including a sticker showing the U.S. Postal Service tracking number of the mailing used by Orange to send the \$12,000 check to Individual 2.

I.      On or about December 9, 2015, defendant EDWARDS caused to be sent through the U.S. mail the $12,000 Orange check payable to Individual 2.

J.      On or about December 10, 2015, defendant EDWARDS received an email from Individual 2, using a server located outside of New Jersey, acknowledging receipt of the Orange check in the amount of $12,000. In the same email, defendant EDWARDS received the Dissertation Proposal written for defendant EDWARDS, paid for, at least in part, by the $12,000 that defendant EDWARDS and Individual 2 fraudulently obtained from Orange.

K.      On or about February 15, 2016, Individual 2 sent an email to Orange Employee 1, using a server located outside of New Jersey, attached to which was a fraudulent invoice seeking a payment of $16,000 for purported "Professional Services for Strategic Advisory and Operational Planning," when defendant EDWARDS and Individual 2 knew that the $16,000 sought was, at least in part, for papers written for defendant EDWARDS for his graduate program at University 1.

L.      On or about February 17, 2016, defendant EDWARDS and Individual 2 exchanged text messages, in which they discussed Individual 2's providing academic papers to defendant EDWARDS in exchange for further payments to Individual 2 from Orange. Defendant EDWARDS and Individual 2 exchanged text messages that stated, in pertinent part:

| SOURCE | TEXT MESSAGE |
|---|---|
| Individual 2's Cell Phone | Willis, I have called, texted n emailed [Orange Employee 1]. [Orange Employee 1] is not responding. U may need to contact urgently so that [Orange Employee 1] follow[s] thru. . . . |
| Defendant EDWARDS's Cell Phone | K, cease and I will follow up |
| Individual 2's Cell Phone | There mayb 5 to 7 documents needed. Let's talk about the |

| SOURCE | TEXT MESSAGE |
|---|---|
| | way forward. Tks. |
| Individual 2's Cell Phone | Bro Willis, U r a man of ur word. Tks for ur intervention. I just heard from [Orange Employee 1].   [Orange Employee 1] indicated that [Orange Employee 1] was quite bz n would address outstanding consultancy 2morrow. Here is what I am recommending. But i need to be guided by ur wisdom. Given what is due, I recommend that the total amount owed be submitted. That is 16000 plus 10000 to equal 26000 for Nov n Dec. This will cover all outstanding. . . . |
| Defendant EDWARDS's Cell Phone | Can't do |
| Defendant EDWARDS's Cell Phone | I think you and I have different math skills |
| Defendant EDWARDS's Cell Phone | Let's speak |
| Defendant EDWARDS's Cell Phone | Way to much |
| Defendant EDWARDS's Cell Phone | And unfair |
| Defendant EDWARDS's Cell Phone | I am in total shock |
| Individual 2's Cell Phone | Don't be in shock. Let's talk. I am in a mtg n will lv the mtg to talk to u in 10mins. I am in ur corner. Don't worry. |
| Individual 2's Cell Phone | U will be fully satisfied when I explain. Will call u in 6mins |
| Individual 2's Cell Phone | Calling now |
| Individual 2's Cell Phone | Got it. We will proceed on 16k as originally discussed. . . . |

       M.     On or about February 25, 2016, defendant EDWARDS and Individual 2 caused Orange to issue a $16,000 check payable to Individual 2 for services purportedly provided to Orange, when defendant EDWARDS and Individual 2 knew that the $16,000 payment was, at least in part, for academic papers written for defendant EDWARDS.

N.      On or about March 1, 2016, Individual 2, with his sister's assistance, communicated with an associate about writing academic papers for defendant EDWARDS.

O.      On or about March 11, 2016, Individual 2 sent an email to Orange Employee 1, using a server located outside of New Jersey, attached to which was a fraudulent invoice seeking a payment of $10,000 for purported "Professional Services for Strategic Advisory and Operational Planning," when defendant EDWARDS and Individual 2 knew that the $10,000 sought was, at least in part, for papers written for defendant EDWARDS for his graduate program at University 1.

P.      On or about April 4, 2016, defendant EDWARDS and Individual 2 caused Orange to issue a $10,000 check payable to Individual 2 for the services purportedly provided to Orange, when defendant EDWARDS and Individual 2 knew that the $10,000 payment was, at least in part, for academic papers written for defendant EDWARDS.

Q.      On or about April 4, 2016, defendant EDWARDS caused to be sent through the U.S. mail the $10,000 Orange check payable to Individual 2.

R.      On or about April 11, 2016, after Individual 2 acknowledged receipt of the $10,000 Orange check, defendant EDWARDS received from Individual 2 an email, attached to which were several papers that Individual 2 had arranged to have written for defendant EDWARDS's courses at University 1.

S.      On or about June 20, 2016, defendant EDWARDS sent emails to several University 1 professors in which he asked them to grade the attached outstanding assignments so that he did "not receive a failing grade for all of the hard work that [he had] done." Attached to these emails were academic papers, including a Dissertation Proposal, which were virtually

38

identical to papers that defendant EDWARDS previously had received from Individual 2 and

which defendant EDWARDS plagiarized and passed off as his own work.

In violation of Title 18, United States Code, Section 1349.

## COUNTS 18 to 22

### (Wire Fraud in Connection with the Plagiarism Scheme)

1.      Paragraph 1A of Count 1 and Paragraphs 2 and 5 of Count 17 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or about June 2015 to in or about June 2016, in the District of New Jersey and elsewhere, defendant

### WILLIS EDWARDS III

and others knowingly did devise and intend to devise a scheme and artifice to defraud Orange of money and property in connection with the Plagiarism Scheme by means of materially false and fraudulent pretenses, representations, and promises.

3.      On or about the dates set forth below, in the District of New Jersey and elsewhere, for the purposes of executing and attempting to execute this scheme and artifice to defraud, defendant

### WILLIS EDWARDS III

knowingly and intentionally did transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as described below:

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| 18 | December 1, 2015 | Individual 2 sent an email to Orange Employee 1, using a server located outside of New Jersey, seeking a $12,000 payment from Orange, which was, at least in part, for papers written for defendant EDWARDS for his graduate program at University 1. |
| 19 | December 9, 2015 | Defendant EDWARDS sent a text message that was transmitted in foreign commerce to Individual 2, who was then outside the United States, attached to which was a photo of a document reflecting that Orange had issued a |

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
|  |  | $12,000 check to Individual 2, including a sticker showing the U.S. Postal Service tracking number of the mailing used by Orange to send the $12,000 check to Individual 2. |
| 20 | December 10, 2015 | Defendant EDWARDS received an email from Individual 2, using a server located outside of New Jersey, acknowledging receipt of an Orange check in the amount of $12,000 and sending the Dissertation Proposal written for defendant EDWARDS. |
| 21 | February 15, 2016 | Individual 2 sent an email to Orange Employee 1, using a server located outside of New Jersey, attached to which was a fraudulent invoice seeking a $16,000 payment, which was, at least in part, for academic papers written for defendant EDWARDS. |
| 22 | March 11, 2016 | Individual 2 sent an email to Orange Employee 1, using a server located outside of New Jersey, attached to which was a fraudulent invoice seeking a $10,000 payment, which was, at least in part, for academic papers written for defendant EDWARDS. |

In violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNTS 23 to 24

### (Mail Fraud in Connection with the Plagiarism Scheme)

1.       Paragraph 1A of Count 1 and Paragraphs 2 and 5 of Count 17 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.       From in or about June 2015 to in or about June 2016, in the District of New Jersey and elsewhere, defendant

### WILLIS EDWARDS III

and others knowingly did devise and intend to devise a scheme and artifice to defraud Orange of money and property in connection with the Plagiarism Scheme by means of materially false and fraudulent pretenses, representations, and promises.

3.       On or about the dates set forth below, in the District of New Jersey and elsewhere, for the purposes of executing and attempting to execute this scheme and artifice to defraud, defendant

### WILLIS EDWARDS III

knowingly and intentionally did place and caused to be placed in a post office and authorized depository for mail, and caused to be delivered thereon, certain mail matter set forth below to be delivered by the U.S. Postal Service:

| COUNT | DATE | MAILING ENCLOSING: |
|-------|------|--------------------|
| 23 | December 9, 2015 | A $12,000 Orange check payable to Individual 2 |
| 24 | April 4, 2016 | A $10,000 Orange check payable to Individual 2 |

In violation of Title 18, United States Code, Section 1341 and Section 2.

42

## COUNT 25

### (Unlawfully Obtaining $5,000 and More in Funds in Connection with the Plagiarism Scheme)

1.      Paragraph 1A of Count 1 and Paragraphs 2 and 5 of Count 17 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      During the time period relevant to Count 25 of this Superseding Indictment:

A.      defendant EDWARDS was an agent of Orange, within the meaning of Title 18, United States Code, Section 666(d)(1).

B.      Orange received benefits in excess of $10,000 under Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, or other forms of Federal assistance within the relevant 12-month time period, within the meaning of Title 18, United States Code, Sections 666(b) and 666(d)(5).

3.      From in or about June 2015 to in or about December 2015, in the District of New Jersey and elsewhere, defendant

WILLIS EDWARDS III

did knowingly embezzle, steal, obtain by fraud, and otherwise without authority convert to the use of persons other than the rightful owner and intentionally misapply money valued at $5,000 and more, owned by, and under the care, custody, and control of, Orange in connection with the Plagiarism Scheme.

In violation of Title 18, United States Code, Section 666(a)(1)(A) and Section 2.

## COUNTS 26 to 27

### (Wire Fraud in Connection with the Graduate School Payments Scheme)

1.      Paragraph 1A and Paragraph 2 of Count 17 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      During the time period relevant to Counts 26 and 27 of this Superseding Indictment:

A.      Defendant EDWARDS was enrolled as a graduate student at University 1 and at another university in New Jersey ("University 2"). On or about December 15, 2015, defendant EDWARDS sent a text message to Individual 2, stating, in substance, that University 1 was willing to let defendant EDWARDS make up classes for which he was enrolled if he paid $12,000 that University 1 had billed him.

B.      Orange Employee 1, who was referred to in Counts 14, 15, 17, 18, 21 and 22 of this Superseding Indictment, was an employee in Orange's Finance Department.

C.      Orange Employee 2 was a public official who held a senior position in the office of the Mayor of Orange.

### The Graduate School Payments Scheme

3.      From in or about December 2015 to in or about July 2016, in the District of New Jersey, and elsewhere, defendant

### WILLIS EDWARDS III

knowingly did devise and intend to devise a scheme and artifice to defraud Orange of money and property in connection with payments for courses that defendant EDWARDS had purportedly taken at University 1 and University 2, by means of materially false and fraudulent pretenses, representations, and promises.

4.      The object of this scheme and artifice to defraud was for defendant EDWARDS to obtain from Orange a total of approximately $25,142 in payments to himself and University 1 related to courses in which defendant EDWARDS was enrolled at University 1 and University 2, through the creation of a fraudulent backdated memorandum purportedly from the Mayor of Orange approving such payments (the "Fraudulent Approval Memorandum").

5.      It was part of this scheme and artifice to defraud that:

A.      In or about February 2016, when defendant EDWARDS was no longer an Orange public official, he dictated the following language to Orange Employee 1 for use in the Fraudulent Approval Memorandum, addressed to defendant EDWARDS: "As per the employee handbook, this memorandum serves as consent for you [defendant EDWARDS] to enroll in the courses as discussed. Please forward the invoices to process for payment." Defendant EDWARDS instructed Orange Employee 1 to backdate the memorandum to August 17, 2015, to give the false impression that defendant EDWARDS had received approval on August 17, 2015 for Orange to pay for academic courses in which he had enrolled.

B.      On or about February 10, 2016, at defendant EDWARDS's direction, Orange Employee 1 sent an email to Orange Employee 2 using a server located outside of New Jersey, which contained a draft of the Fraudulent Approval Memorandum, including the language that defendant EDWARDS had dictated, addressed to defendant EDWARDS and backdated to August 17, 2015. No name was included next to "From" in the draft Fraudulent Approval Memorandum to indicate the person who purportedly approved defendant EDWARDS's reimbursement for the courses. Orange Employee 2 later provided Orange Employee 1 with a final copy of the Fraudulent Approval Memorandum, on Orange letterhead, purportedly from the Mayor

of Orange. The Fraudulent Approval Memorandum was addressed to defendant EDWARDS and backdated to August 17, 2015. It included the language that defendant EDWARDS had dictated to Orange Employee 1 in February 2016. The Fraudulent Approval Memorandum bore the stamp of the initials of the Mayor of Orange to give the false impression that the Mayor of Orange had approved defendant EDWARDS's reimbursement for the courses, when the Mayor of Orange had not done so.

        C.      On or about February 10, 2016, Orange issued the following checks as requested by defendant EDWARDS:

        i.      A check in the amount of $12,750 made payable to University 1; and

        ii.      A check in the amount of $12,392 made payable to defendant EDWARDS for courses that he purportedly had taken, including courses at University 2 (collectively "defendant EDWARDS's graduate school payments").

Among the documents submitted in support of the Purchase Orders for defendant EDWARDS's graduate school payments was the Fraudulent Approval Memorandum.

        6.      On or about April 22, 2016, after concerns about defendant EDWARDS's graduate school payments were raised by others, including the Mayor of Orange and the Orange City Council, defendant EDWARDS sent and caused to be sent a letter addressed to Orange Employee 1, in which was enclosed a certified check in the amount of $5,464.28 made payable to Orange and a University 1 receipt showing a payment of $12,750 on or about February 12, 2016 on defendant EDWARDS's student account. Defendant EDWARDS's letter stated, in pertinent part:

> Thank you for your recent inquiry, regarding reimbursement for professional development courses I took while employed with the City of Orange Township. Although payment was made in 2016, courses were taken in the Spring, Summer and Winter of 2015. My separation from the City of Orange was not until December 31, of 2015. While

I disagree with the recent discussion regarding my academic development and the inconsistency on what classes the City chooses to reimburse I have enclosed a certified check in the amount of $5,464.28 for the (3) course that may be perceived as unrelated. If this payment and supporting documentation is insufficient, and I do not here [sic] from you within (5) business days I will consider this matter closed.

7.      On or about July 12, 2016, defendant EDWARDS dictated language to Orange Employee 1 to respond to concerns about defendant EDWARDS's graduate school payments raised by the Orange City Council. On or about the same date, Orange Employee 1 sent an email to defendant EDWARDS, using a server located outside of New Jersey, attached to which was a document setting forth the language that defendant EDWARDS had dictated to Orange Employee 1. The attached document included, in pertinent part, the following reference to the Fraudulent Approval Memorandum: "The request was made and approved by the Mayor and said document was attached to the purchase order."

8.      On or about the dates listed below, in the District of New Jersey, and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, defendant

WILLIS EDWARDS III

knowingly and intentionally did transmit and cause to be transmitted by means of wire, radio, and television communications in interstate commerce, certain writings, signs, signals, pictures, and sounds, as listed below:

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| 26 | February 10, 2016 | At defendant EDWARDS's direction, Orange Employee 1 sent an email to Orange Employee 2, using a server located outside of New Jersey, containing a draft of the Fraudulent Approval Memorandum. |

| 27 | July 12, 2016 | Orange Employee 1 sent an email to defendant EDWARDS, using a server located outside of New Jersey, attached to which was a document containing the language that defendant EDWARDS had dictated to Orange Employee 1 to respond to the Orange City Council's concerns about defendant EDWARDS's graduate school payments. |

In violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNT 28

### (Conspiracy to Defraud the United States and the Internal Revenue Service)

1.       Paragraph 1A of Count 1 of this Superseding Indictment is realleged and incorporated by reference as though fully set forth herein.

2.       At all times relevant to Count 28 of this Superseding Indictment:

A.       Defendant EDWARDS was the sole proprietor of Natural Care Municipal Cleaning Services LLC ("Natural Care"), a company that purportedly provided janitorial services.

B.       Zenobia Williams ("Williams") operated a business called Maplewood Business Services LLC ("MBS") located in Maplewood, New Jersey, which, among other things, aided and assisted in preparing federal income tax returns for its clients for a fee.

C.       The Internal Revenue Service ("IRS"), an agency within the United States Department of Treasury, was responsible for administering and enforcing the tax laws of the United States, including the federal income tax laws.

3.       From in or about January 2016 to on or about April 15, 2016, in the District of New Jersey and elsewhere, defendant

WILLIS EDWARDS III

knowingly and willfully conspired and agreed with Williams and others to defraud the United States by impeding, impairing, and defeating the lawful government functions of the IRS to ascertain, assess, collect, and refund income taxes.

### Object of the Conspiracy

4.       It was the object of the conspiracy to defraud the United States and the IRS by

reporting false and fraudulent labor expenses for Natural Care on defendant EDWARDS's IRS Form 1040, U.S. Individual Income Tax Return ("Form 1040"), and Schedule C for tax year 2015 in order to decrease defendant EDWARDS's tax liability.

Manner and Means of the Conspiracy

5.    It was part of the conspiracy that:

A.    At defendant EDWARDS's direction, Williams prepared and caused to be filed with the IRS defendant EDWARDS's false and fraudulent Form 1040 and Schedule C for tax year 2015 reporting bogus labor expenses for Natural Care totaling $27,055, resulting in a decrease of defendant EDWARDS's tax liability.

B.    Defendant EDWARDS and Williams communicated with each other, including through text messaging, about reporting false and fraudulent labor expenses for Natural Care on defendant EDWARDS's Form 1040 and Schedule C for tax year 2015.

C.    Defendant EDWARDS and Williams agreed to have phony IRS Forms 1099 created and issued to give the false appearance that, in 2015, Natural Care paid compensation for labor to two Individuals ("Individual 3" and "Individual 4"), totaling $27,055, when defendant EDWARDS and Williams knew that no such compensation had been paid.

Overt Acts

6.    In furtherance of the conspiracy and to effect its object, the following overt acts were committed in the District of New Jersey and elsewhere:

A.    On or about January 5, 2016, Williams sent defendant EDWARDS a text message, stating, "Hey Fella, I have 1 client right now that needs 15,750 in income. I need you to

50

produce a 1099MISC form for that person. I will give you the information. Let me know how much more income you need to 1099."

      B.    On or about January 12, 2016, defendant EDWARDS sent Williams a text message, stating, "I'm back, let's connect."

      C.    On or about January 20, 2016, Williams sent defendant EDWARDS a text message, stating, "Good morning, you have to see me. I can't play or wait. You must submit 1099-misc."

      D.    In or about January 2016, at defendant EDWARDS's direction, Williams prepared two phony IRS Forms 1099 which falsely stated that, in 2015, Natural Care paid: (1) Individual 3 compensation of $15,800 and (2) Individual 4 compensation of $11,255, when both defendant EDWARDS and Williams knew that Natural Care had not incurred such labor expenses totaling $27,055.

      E.    In or about April 2016, defendant EDWARDS signed an IRS Form 8879 authorizing a representative of MBS to electronically file with the IRS defendant EDWARDS's Form 1040 for tax year 2015 using defendant EDWARDS's personal identification number as his signature.

      F.    On or about April 15, 2016, defendant EDWARDS and Williams caused defendant EDWARDS's personal identification number to be used as his signature on defendant EDWARDS's Form 1040 for tax year 2015, which contained a written declaration that it was filed under penalties of perjury and which, as defendant EDWARDS and Williams knew, falsely reported the sham $27,055 labor expense for Natural Care.

      G.    On or about April 15, 2016, while Williams was in Maplewood, New

Jersey, defendant EDWARDS and Williams caused defendant EDWARDS's Form 1040 and Schedule C for tax year 2015 to be filed electronically with the IRS.

In violation of Title 18, United States Code, Section 371.

## COUNT 29

### (Subscribing to a False Tax Return)

1.      Paragraphs 1 and 4 through 6 of Count 1, Paragraphs 2 and 5 of Count 14, and

Paragraphs 2, 5, and 6 of Count 28 of this Superseding Indictment are realleged and incorporated

by reference as though fully set forth herein.

2.      On or about April 15, 2016, defendant EDWARDS authorized his personal

identification number to be used as his signature on his Form 1040 for tax year 2015, which

contained a written declaration that it was filed under penalties of perjury.

3.      On or about April 15, 2016, defendant EDWARDS caused to be filed with the

IRS his Form 1040 for tax year 2015, which reported that his total income for that tax year was

$145,020, that Natural Care had $27,055 in labor expenses, that no tax was due and owing, that

defendant EDWARDS had overpaid taxes and was owed a refund in the amount of $4,564.

Defendant EDWARDS's Form 1040 for tax year 2015 was not true and correct as to every

material matter, as defendant EDWARDS well knew, in that:

A.      It falsely reported the sham $27,055 labor expense for Natural Care; and

B.      It failed to disclose and report additional income that defendant

EDWARDS received in tax year 2015, namely:

     i.      ill-gotten gains that defendant EDWARDS obtained in
connection with the Saturday Literacy Program, the
Redevelopment Project, the YWCA Project, and the
Municipal Complex Project; and

    ii.      additional gross receipts in excess of the $40,000 reported
for Natural Care resulting from payments of approximately
$52,000 by a New Jersey law firm and approximately
$32,500 by the Board of Education of a city in New Jersey

for services purportedly provided by defendant EDWARDS
and Natural Care.

4.    On or about April 15, 2016, in the District of New Jersey and elsewhere,

defendant

## WILLIS EDWARDS III

willfully did make and subscribe an IRS Form 1040 for tax year 2015, which contained and was

verified by a written declaration that it was made under penalties of perjury and which he did not

believe to be true and correct as to every material matter, as set forth in paragraph 3 of Count 29.

In violation of Title 26, United States Code, Section 7206(1).

## COUNTS 30 to 31

### (False Statements Concerning a Mortgage)

1.      Paragraph 1A of Count 1 of this Superseding Indictment is realleged and incorporated by reference as though fully set forth herein.

2.      On or about January 21, 2005, defendant EDWARDS and his wife received a $248,000 thirty-year mortgage loan from a mortgage company in connection with the purchase of real estate property located in East Orange, New Jersey (the "Edwards's mortgage loan"), which became the Edwards's residence. Only defendant EDWARDS was named as the borrower on the Adjustable Rate Note executed on or about January 21, 2005.

3.      Subsequently, the Edwards's mortgage loan and other loans were pooled together to create a security sold to investors and a Trust was established as the owner of the security. As of in or about the beginning of 2014, a bank in New York (the "Bank") was the Trustee for the Trust. At all times relevant to Counts 30 and 31 of this Superseding Indictment, the Bank's accounts were insured by the Federal Deposit Insurance Corporation.

4.      In or about the beginning of 2014, an agent of the Bank (the "Bank's Agent"), became the servicer of the Edwards's mortgage loan.

5.      As of on or about February 11, 2014, defendant EDWARDS had fallen substantially in arrears on his mortgage payments. In a letter, dated February 11, 2014, defendant EDWARDS was advised by the Bank's Agent: (a) that the amount of the debt that defendant EDWARDS owed was approximately $378,044.28, which included unpaid principal balance, interest, and other charges and (b) that the Bank's Agent was collecting the debt on behalf of the Bank.

6.      On or about April 7, 2014, defendant EDWARDS submitted and caused to be submitted a completed Request for Mortgage Assistance form to the Bank's Agent, which defendant EDWARDS signed and caused to be signed on or about March 21, 2014, certifying that all the information that he submitted was truthful and stating that he understood that knowingly submitting false information could constitute fraud. In the section regarding Employment Information, defendant EDWARDS stated, in substance, that his monthly income from Orange was $7,500. In response to a question on the form asking for the name of a second employer, defendant EDWARDS falsely and fraudulently responded, "N/A," thus indicating that he did not have a second employer, when, at the time, defendant EDWARDS also was employed by a New Jersey County College (the "New Jersey County College") at an annual salary of approximately $45,000. With the completed Request for Mortgage Assistance form, defendant EDWARDS also submitted and caused to be submitted to the Bank's Agent an Earnings Statement reflecting income that defendant EDWARDS earned from Orange for the pay period ending on or about March 8, 2014. Defendant EDWARDS did not submit documentation reflecting income that he earned from the New Jersey County College.

7.      On or about May 2, 2014, defendant EDWARDS submitted and caused to be submitted to the Bank's Agent:

A.      A letter from defendant EDWARDS to the Bank's Agent, dated April 20, 2014, in which he referred to his employment by Orange, but not to his employment by the New Jersey County College; and

56

       B.      An Earnings Statement reflecting income that defendant EDWARDS earned from Orange for the pay period ending on or about April 19, 2014, but not documentation reflecting income that defendant EDWARDS earned from the New Jersey County College.

      8.      In a letter, dated September 10, 2014, the Bank's Agent notified defendant EDWARDS that he was eligible for a modification of the Edwards's mortgage loan, as he had requested.

      9.      On or about October 8, 2014, defendant EDWARDS submitted and caused to be submitted to the Bank's Agent a Home Affordable Modification Agreement, which defendant EDWARDS signed and caused to be signed on or about September 22, 2014 (the "HAM Agreement"). In the HAM Agreement, defendant EDWARDS certified and represented to the Bank's Agent that:

      A.    Defendant EDWARDS had "provided documentation for **all** income that [he] receive[d]" (emphasis in original), and

      B.    "Under penalty of perjury, all documents and information [defendant EDWARDS] provided to [the Bank's Agent] in connection with this Agreement . . . are true and correct."

Defendant EDWARDS made these representations knowing that he had falsely claimed on his Request for Mortgage Assistance that he did not have a second employer and that he had submitted and caused to be submitted Earnings Statements only from Orange, despite the fact that he was paid an annual salary of approximately $45,000 by the New Jersey County College.

      10.     As a result of the loan modification granted in reliance upon the false representations made by defendant EDWARDS regarding his income and documents and information he provided, the Bank's Agent provided the following benefits, among others, to defendant EDWARDS:

       A.      Approximately $95,590.81 of defendant EDWARDS's debt was forgiven between July 2015 and July 2017; and

       B.      The real estate property was taken out of foreclosure.

    11.      On or about the dates listed below, in the District of New Jersey and elsewhere, defendant

WILLIS EDWARDS III

did knowingly make and cause to be made false statements as listed below for the purpose of influencing in some way the action of the Bank's Agent and the Bank in connection with his Request for Mortgage Assistance:

| COUNT | DATE | FALSE STATEMENT |
|---|---|---|
| 30 | April 7, 2014 | Defendant EDWARDS's false statement in his Request for Mortgage Assistance that he did not have a second employer. |
| 31 | October 8, 2014 | Defendant EDWARDS's false statement in the HAM Agreement that he provided documentation for all income that he received. |

In violation of Title 18, United States Code, Section 1014 and Section 2.

## FORFEITURE ALLEGATION AS TO COUNTS 1 THROUGH 27

1.    As a result of committing the offenses charged in Counts 1 through 27 of this Superseding Indictment, defendant

WILLIS EDWARDS III

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses charged in Counts 1 through 27 of this Superseding Indictment.

## FORFEITURE ALLEGATION AS TO COUNTS 30 AND 31

2.    As a result of committing the offenses charged in Counts 30 and 31 of this Superseding Indictment, defendant

WILLIS EDWARDS III

shall forfeit to the United States pursuant to Title 18, United States Code, Sections 982(a)(2)(A), any property, real and personal, constituting, or derived from, proceeds obtained directly and indirectly as a result of the offenses charged in Counts 30 and 31 of this Superseding Indictment.

## SUBSTITUTE ASSETS PROVISION

### (Applicable to All Forfeiture Allegations)

3.    If any of the above-described forfeitable property, as a result of any act or omission of defendant EDWARDS:

      A.  Cannot be located upon the exercise of due diligence;

      B.  Has been transferred or sold to, or deposited with, a third party;

      C.  Has been placed beyond the jurisdiction of the court;

      D.  Has been substantially diminished in value; or

E.  Has been commingled with other property which cannot be
    divided without difficulty;

the United States shall be entitled, pursuant to 21 U.S.C. § 853(p) (as incorporated by 28 U.S.C.

§ 2461(c) and 18 U.S.C. § 982(b)), to forfeiture of any other property of defendant EDWARDS

up to the value of the above-described forfeitable property.

                                                        A TRUE BILL


*Craig Carpenito*
CRAIG CARPENITO
UNITED STATES ATTORNEY

60

**CASE NUMBER:** 20-572 (KM)

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

**v.**

## WILLIS EDWARDS III

## SUPERSEDING INDICTMENT FOR
18 U.S.C. §§ 371, 666(a)(1)(A),
666(a)(1)(B), 981(a)(1)(C), 982(a)(2), 1014,
1341, 1343, 1346, 1349, and 2; 26 U.S.C.
§ 7206(1); and 28 U.S.C. § 2461



A True Bill

Foreperson

### CRAIG CARPENITO
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

CARI FAIS
J FORTIER IMBERT
*ASSISTANT U.S. ATTORNEYS*
*973-353-6076*
*973-645-2890*