UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ………………………………………………. | : | Hon. Kevin McNulty |
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 20-572 (KM) |
| vs. | : | |
| | : | MEMORANDUM OF LAW IN |
| WILLIS EDWARDS III | : | SUPPORT OF MOTION PURSUANT |
| | : | TO FED. R. CRIM. P. 41(G) FOR |
| | : | RETURN OF PROPERTY |
| ……………………………………………: | | |

**MEMORANDUM OF LAW REPLYING TO
THE GOVERNMENT'S OPPOSITION BRIEF TO
DEFENDANT'S MOTION FOR RETURN OF PROPERTY**

Willis Edwards III (hereinafter "Defendant"), through undersigned counsel, respectfully submits this response to the Government's opposition brief to his December 30, 2020 motion for return of property pursuant to Federal Rule of Criminal Procedure 41(g).

Defendant reiterates and incorporates many of the points from his motion, most significantly that the items seized are his lawful property, not contraband, not subject to forfeiture, and not needed as evidence by the Government. *See U.S. v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999) (quoting *U.S. v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991)). Additionally, the items seized have been analyzed, reviewed and documented by the Government for their evidentiary value, if the Government believes they have any at all. It is this analysis of those items, not the items themselves, that is the potential evidence in this case. The Government will be in possession of this analysis regardless of whether they return the seized items or not. Thus, because the Government has possession of this analysis, Defendant seeks return of property he has been deprived of for over four (4) years.

1

The Government indicates the "[i]tems and evidence obtained pursuant to the [] search warrants are relevant not only to [Defendant's] case, but also to other pending criminal cases, namely, *United States v. Shanandoah Adams Sr.*, 20-194 (ES), *United States v. Anthony Salters*, 20-710 (CCC), and *United States v. Jeanmarie Zahore*, 20-709 (KM)." *See* Government's Opposition Br., at 3 (Feb. 16, 2021). Because the evidence is involved in multiple cases, the Government argues "Defendant cannot meet his burden of showing that the seized property is not of use in an investigation or trial." *Id.* at 5-6.

As to the electronic devices, the Government states that "[b]ecause it is not only Defendant's pending case where these devices are relevant, [Defendant's] offer to stipulate as to the authenticity of the contents of the devices is insufficient to relieve the Government of its duty to preserve the evidence." *Id.* at 6.

To support this proposition, the Government cites to *United States v. Tabatabai*, 2013 WL 12336143 (C.D.Ca Aug 26, 2013). However, a review of this case does not lead to that conclusion. *Tabatabai* merely cites *United States v. Williams*, 181 F.Supp.2d 267 (S.D.N.Y. 2001). In *Williams*, the defendant requested the return of money and jewelry, which the Government was going to offer into evidence to prove the defendant was engaged in a lucrative narcotics trafficking business and that religious beads would be offered to corroborate other evidence. *Id.* at 300-01. Because the Government intended to use these items at trial, the Court declined to order the Government to use photographs of the items or stipulate to their authenticity. *Id.* at 301.

A stipulation to authenticity here would not be insufficient. This was the holding in *United States v. Tilton*. 2020 WL 4188128, at *1 (D.N.J. Jul. 21, 2020). The defendant in *Tilton* sought the return of various electronic devices and the Government

2

agreed to return the devices if the defendant stipulated to the "authenticity of the copies of the contents of these devices prior to their return." *Ibid.* The Court held:

> As the Government may rely on the contents of the devices at trial, its need for the property as evidence continues[; thus, if the d]efendant stipulates to the authenticity of electronic copies, that need dissipates and the Government SHALL promptly return the devices. If Defendant refuses to so stipulate, the Government MAY withhold the devices through trial.

*Ibid.*

To say a stipulation would be insufficient is contrary to this District's holding in *Tilton*, and Defendant reiterates his position from his motion that he will not contest and certify that the contents of the electronic devices obtained by the Government are authentic.

While the Government contends that "[t]he electronic devices that the Government opposes returning are evidence in pending criminal cases [and] that should end the inquiry," this statement is a misrepresentation of the true inquiry. Whether a case is pending or not merely establishes who has the burden. *See Chambers*, 192 F.3d 374, 377 (3d Cir. 1999). The inquiry is whether (1) the defendant is entitled to lawful possession of the seized property, (2) the property is contraband, (3) the property is subject to forfeiture proceedings, and (4) the government has need for the property as evidence. *Ibid.*

Here, all four factors weigh in favor of the Defendant and he can overcome his burden. As previously argued in his motion, the electronics were all in his residence in his lawful possession. The electronics are not contraband nor subject to forfeiture proceedings. Additionally, there is no evidentiary value to the electronic devices themselves, only the content on the devices which has been copied and is in the Government's possession, regardless of whether the electronic devices are returned or not. The electronic

devices in this case are mere vessels, as opposed to the value they would potentially serve if the allegations were that Defendant had stolen them from a Best Buy or Apple store. Here, it is the contents of the vessels, the items found within, that are the relevant evidence, if any. Thus, Defendant's motion should be granted as to the electronics.

The Government next argues that the $10,000.00 seized from Defendant's residence should not be returned "because currency, especially a hidden stash of a large amount of cash, is probative of Defendant's receipt of cash kickbacks and bribes." *See* Government's Opposition Br., at 7-8 (Feb. 16, 2021). The Government cites to four cases to support this proposition: *United States v. Chandler*, 326 F.3d 210 (3d Cir. 2003); *United States v. Sullivan*, 911 F.2d 2 (7th Cir. 1990); *United States v. Hogan*, 886 F.2d 1497 (7th Cir. 1989); and *United States v. Magnano*, 543 F.2d 431 (2d Cir. 1976). All four cases are distinguishable from the case at hand.

*Chandler*, unlike this case, was a narcotics prosecution case and not a 41(g) motion case. *Chandler* cites to *United States v. Saint Prix* for the proposition that "[i]n a narcotics prosecution, it is well established that the government may introduce evidence of cash purchases coupled with tax evidence tending to show that a defendant had no legitimate source of cash." 672 F.2d 1077, 1084 (2nd Cir. 1982). *Chandler* further cites to *United States v. Briscoe*'s holding that it is:

> well settled that in narcotics prosecutions, a defendant's possession and expenditure of large sums of money, as well as his or her failure to file tax returns, are relevant to establish that the defendant lacked a legitimate source of income and that, in all probability, the reason for the failure to report this income is due to the defendant's participation in illegal activities.
>
> 896 F.2d 1476, 1500 (7th Cir. 1990).

*Chandler* is distinguishable because it explores the 41(g) motion in the narrow context of a narcotics prosecution in which other circuits, such as the First and Eighth circuits, "consistently have upheld the admissibility of such evidence when it reasonably supports the government's assertion that the defendant possessed substantial cash *not obtained through legitimate means*." Chandler, 326 F.3d at 215 (emphasis added). The *Chandler* court noted "[t]he touchstone of the admissibility inquiry is not the amount of money in the defendant's possession, but whether defendant's failure to account for its source tends to support the government's claim that the money was obtained through illegitimate means." *Ibid.*

*Chandler*, in comparison to the case at hand, does not stand for the proposition that a "hidden stash of a large amount of cash[] is probative of Defendant's receipt of cash and kickbacks and bribes." In fact, *Chandler* did not even deal with paper currency found in a person's home, but rather it dealt with cash deposits. It was the fact the defendant was not reporting income, while she had cash deposits that made her tax history probative, not physical United States Currency. The *Chandler* court also noted that the evidence the government is seeking to introduce must support that defendant possessed money not obtained through legitimate means. In the case at hand, the $10,000.00 was money seized from a safe. It was not a hidden stash. There is nothing unheard of, abnormal, or suspicious about money kept in a safe in a personal residence, and thus nothing that can be shown that this money was obtained through illegitimate means. Rather, the evidence shows that the Defendant and his wife obtained this money through both of their employments, as well as gifts and savings over the years, and kept this money in their home as cash on hand to use in their daily life.

The Government also cites to *Sullivan*, which is also not a 41(g) motion case, and is equally as distinguishable to the case at hand. The Government cites to *Sullivan* for the proposition that "evidence that [a] public official had a large amount of cash maintained in a shoebox was "highly probative" of bribe payments and corroborated testimony of the witness who said that he had paid substantial bribes to the public official." *See* Government's Opposition Br., at 8 (Feb. 16, 2021). However, the Government ignores the distinct issue in *Sullivan*, a minor one at best, regarding the admissibility of testimony about a shoebox where the defendant was seen to have kept $31,500.00 in cash that was used to open two bank accounts for defendant's corporation. *Sullivan*, 911 F.2d at 10. This distinction is critical as the issue before this Court is whether a physical item can be returned to Defendant, not the admissibility of testimony regarding a physical item. Additionally, it must be pointed out that in *Sullivan* there was a witness who could testify that the defendant kept money in a shoebox and brought that shoebox to open up two bank accounts. *Id.* at 5. Here, there is no evidence that the $10,000.00 in a safe has any connection to anything besides a couple keeping their personal cash on hand for their daily lives.

The Government next cites to *Hogan* for the proposition that "evidence of wealth may be admissible to establish that a person engaged in a cash-intensive criminal enterprise, even if there is another explanation for the extra money." 886 F.2d at 1507. However, *Hogan*, which again is not a 41(g) motion case, dealt with the admissibility of defendant's failure to report $20,000.00 of taxable income, not the return of defendant's property. Thus, *Hogan* is also off point and distinguishable.

Finally, the Government cites to *Magnano*, but this case, also a non-41(g) motion case as well as a narcotics prosecution case, is distinguishable. The issue in

*Magnano* was the admissibility of $1,000,000.00 in cash when the defendant owed various people several hundred thousands of dollars when the $1,000,000.00 was seized. 543 F.2d at 437. The *Magnano* court cited to *United States v. Tramunti* where the Court held "[t]he possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking on a large scale is similar to the possession of special means, such as tools or apparatus, which is admissible to show the doing of an act requiring those means." 513 F.2d, 1087, 1105 (2d Cir), cert. denied, 419 U.S. 1079 (1975). The case at hand deals with $10,000.00 found in a safe, in the home of two employed professionals. We are not dealing with large amounts of unexplained cash here. The case at hand does not feature $1,000,000.00 found in the home of someone who owes people several hundred thousands of dollars and is caught up in a narcotics conspiracy. Thus, again we have a case where the facts and issues are starkly different.

The Government merely states that Defendant "falls far short" of its burden to show the $10,000.00 is not evidence of "his receipt of cash bribes and kickbacks." *See* Government's Opposition Br., at 8 (Feb. 16, 2021). The Government further states the $10,000.00 is "evidence that Defendant collected cash kickbacks and bribes and filed a false and fraudulent tax return." *Id.* at 9. However, there is nothing criminal about keeping money in one's home. $10,000.00 in a safe in one's home is not evidence of "evidence of wealth . . . to establish that a person engaged in a cash-intensive criminal enterprise, even if there is another explanation for the extra money." 886 F.2d at 1507. If it were, then $10,000.00 in anyone's house, safe, safety deposit box, or bank account, would be deemed nefarious and evidence of criminal activity.

The Government cites to *United States v. Robinson* and *United States v. Mawlawi* to support its conclusion that the motion should be denied since courts have found money in a home has constituted evidence of a crime; however, these cases are again readily distinguishable.

*Robinson* found, and the Government cites to the holding, that "a legitimate reason to retain the funds seized as cash . . . until the termination of the present criminal proceedings." 2016 WL 11396813, at *3 (D. Neb. June 27, 2016). However, the *Robinson* case was vastly different from this case. *Robinson* involved hundreds of thousands of dollars that had been seized and was in relation to a drug trafficking case. The money was seized from defendant's home, bank accounts, and during the course of two traffic stops. The *Robinson* Court, in denying the 41(g) motion, cited to *United States v. $124,700, in Currency* for the proposition that "[p]ossession of a large sum of cash is 'strong evidence' of a connection to drug activity." 458 F.3d 822, 826 (8th Cir. 2006). Thus, the *Robinson* case is again narrowly focused on narcotics based prosecutions and very large sums of money, significantly greater than $10,000.00.

Likewise, the *Mawlawi* case is also not comparable to the case at bar. The Court in *Mawlawi* gave a sparse explanation for its denial of the 41(g) motion beyond "the government's showing to the court that the items at issue are necessary for the ongoing investigation of the defendant for bankruptcy fraud." 2007 WL 9718509, at *2 (W.D. Tenn. Jan. 24, 2007). The items seized though were four guns and $38,000.00 in cash and it was after the defendant had indicated in his Chapter 7 Bankruptcy filing that he had $410.00 in cash to his name. Thus, the items recovered were actual evidence that he had committed fraud. The $10,000.00 recovered here is not actual evidence of anything beyond Defendant

and his wife being in possession of $10,000.00. There is nothing readily criminal about Defendant being in possession of the money like the defendant in *Mawlawi*.

Thus, the cases the Government cites to in support as to why the Defendant should not receive the $10,000.00 do nothing to contradict the Defendant and his wife's statement as to where this money came from and what its purpose was. The Defendant offers an explanation as to the $10,000.00 to show it is lawfully his, not contraband, not subject to forfeiture, and lacks any evidentiary value as it comes from legitimate means to be used for legitimate reasons. None of the decisions cited to by the Government negate the Defendant's position. Accordingly, the Defendant's motion should be granted as to the $10,000.00.

## CONCLUSION

For the reasons set forth above, and those stated in Defendant's motion, Defendant asks that you grant his Rule 41(g) motion.

Respectfully submitted,

DUGHI, HEWIT & DOMALEWSKI

*/s/ Brandon D. Minde*

Brandon D. Minde

Date: March 9, 2021