**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIS EDWARDS, III,<br><br>Defendant. | Case No. 2:20-cr-00572-BRM<br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are Defendant Willis Edwards, III's ("Defendant") pre-trial motions requesting: (I) a bill of particulars, (II) an immediate hearing on the admissibility of F.R.E. 404(b) evidence, (III) immediate disclosure of the conviction records of potential witnesses, as well as their agreements with the United States of America ("Government"), (IV) preservation of rough notes from the Government's investigation, (V) immediate disclosure of all relevant evidence regarding confidential informants and potential witnesses, (VI) an immediate hearing to determine the admissibility of hearsay statements by co-conspirators, (VII) immediate production of Jencks Act materials, (VIII) immediate disclosure of *Brady* and *Giglio* materials, (IX) the striking of the term "Plagiarism Scheme" from Counts 18 to 25 of the superseding indictment ("Indictment"), (X) the severance of the Indictment, and (XI) dismissal of Counts 2 and 3 of the Indictment for being outside the relevant statute of limitations. (ECF No. 64.) The Government filed an opposition on May 22, 2023. (ECF No. 66.) Having reviewed the parties' submissions filed in connection with the Motions and having declined to hold oral argument, for the reasons set forth below and for good cause having been shown, Defendant's pre-trial motions are **DENIED**. Motions I, to the

extent it requests the identification of unindicted co-conspirators, as well as Rule 404(b) and Jencks Act evidence, II, III, IV, V, VI, VII, and VIII are **DENIED WITHOUT PREJUDICE**. Motions I, to the extent it calls for a bill of particulars containing further substantive details on the charges, IX, X, and XI are **DENIED WITH PREJUDICE.**

## I.    BACKGROUND

### A.    Factual Background

The Indictment of September 29, 2020 variously charges Defendant with fraud pertaining to his conduct as the City of Orange's ("City") Business Administrator, as well as for false statements on tax forms and mortgage relief applications. (ECF No. 14 ("Indictment").) Defendant was appointed as Business Administrator for the City in July 2012, a position he held until December 31, 2015. (*Id.* at Count 1 ¶ 1A.) Count 1 charges Defendant with various conspiracies to defraud the City of his "honest services" as a public official, and of its money and property, via the use of interstate wire transmissions in furtherance of three schemes: the Saturday Literacy Program scheme (*id.* ¶¶ 4A–H), the Redevelopment Project scheme (*id.* at Count 1 ¶¶ 5A–H), and the Young Women's Christian Association ("YWCA") Project scheme (*id.* ¶¶ 6A–G).

The Saturday Literacy Program scheme involved Defendant allegedly creating false vouchers to reimburse Orange Public Library ("Library") for payments made to Urban Partners, a consulting firm run by Franklyn Ore ("Ore"), an associate of Defendant. (*Id.* ¶¶ 1C, 4A–B.) These payments were made for a purported Saturday Literacy Program administered by Urban Partners at the Library. (*Id.* ¶ 4B.) The program was supported using Federal Community Development Block Grant funds distributed through the County of Essex to the Library for the reimbursement of Urban Partners. (*Id.* ¶¶ 4A–H.) This Saturday Literacy Program never occurred. (*Id.* ¶ 4B.) Between May 2015 to August 2015, the Library paid Urban Partners approximately $36,000, and

Defendant subsequently received a portion of this amount in kickbacks from Urban Partners. (*Id.* ¶ 4G–H.)

The Redevelopment Project scheme arose from Defendant's alleged facilitation of a $150,000 contract between the City and an urban planning company for professional economic planning services to analyze the conditions in the Central Orange Redevelopment Area. (*Id.* ¶¶ 1G, 5A–H.) Defendant used his position to arrange for the urban planning company to hire Urban Partners to work on the Redevelopment Project. (*Id.* ¶ 5B.) The urban planning company paid Urban Partners $33,220 between August 2015 and February 2016 for its work on the project, of which a substantial amount was then paid to Defendant by Urban Partners as a kickback. (*Id.* ¶¶ 5E–F.) The urban planning company subsequently paid Urban Partners an additional $4,160 on May 27, 2016, of which $2,000 was allegedly paid by Urban Partners to Defendant as a kickback on June 15, 2016. (*Id.* ¶¶ 5G–H.)

The YWCA Project scheme is based on Defendant's facilitation of a fraudulent invoice from Urban Partners billing the City for work on the redevelopment of a YWCA building into a community recreation center. (*Id.* ¶¶ 1H, 6A–G.) Defendant allegedly facilitated the issuance of a City purchase order of $16,800 to Urban Partners for work on the project which never occurred. (*Id.* ¶¶ 6B–D.) The City issued a check to Urban Partners for $16,800, of which a substantial portion was allegedly then paid by Urban Partners to Defendant as a kickback. (*Id.* ¶¶ 6E–G.)

The Municipal Complex Project scheme involved the awarding of a $350,000 emergency contract to JZ Nettech, a computer consulting business owned by Jeanmarie Zahore ("Zahore"), to install a computer networking system at a City municipal complex. (*Id.* at Count 14 ¶¶ 2A–C.) Defendant allegedly gave favorable treatment to JZ Nettech in exchange for two cash payments from Zahore in the amount of approximately $10,000 in November 2015. (*Id.* ¶¶ 5W–Y.) These

payments constituted kickbacks for the awarding of the $350,000 contract to JZ Nettech and subsequent payments on the contract. (*Id.* ¶¶ 5C–V.) Defendant assisted Zahore with various forms needed for JZ Nettech to obtain the contract. (*Id.* ¶ 5G.)

Defendant also allegedly used his position as Business Administrator for the City to facilitate City payments to Isaac Newton ("Newton") in exchange for Newton writing academic papers for Defendant's university graduate program which Defendant passed off as his own work. (*Id.* at Count 17 ¶ 2B.) Defendant arranged for Newton to do consulting work for the City in exchange for writing papers for his university graduate course. (*Id.* ¶ 5C.) The Indictment links invoices submitted by Newton to the City with the dates Defendant received academic papers from Newton, including the submission of a December 1, 2015 invoice to the City the same day Newton emailed Defendant a 30-page dissertation proposal. (*Id.* ¶ 5F.)

The Graduate School Payments scheme deals with payments made by the City to Defendant to help him pay for graduate courses at a university. (*Id.* at Counts 26–27 ¶ 4.) After leaving his position as Business Manager for the City, Defendant allegedly forged a backdated approval memorandum authorizing the City to pay Defendant for his graduate courses. (*Id.* ¶ 5A.) The fraudulent approval memorandum bore the stamp of the initials of the Mayor of Orange to give the false impression that the Mayor had approved the reimbursement, but no such approval was ever given. (*Id.* ¶ 5B.) The City made a payment of $12,750 directly to the university where Defendant was taking graduate courses, and paid Defendant $12,392 for courses purportedly taken in the past. (*Id.* ¶ 5C.) When concerns were raised by other officials in the City regarding the reimbursements, Defendant repaid $5,464.28 to the City. (*Id.* ¶ 6.)

The Indictment also alleges two tax fraud schemes regarding Defendant's tax filings, with the first scheme being Defendant's claiming of false and fraudulent labor expenses for his business,

4

Natural Care (*id.* at Count 28 ¶ 4), and the second being Defendant's failure to report various income sources on IRS Form 1040, including income from the Saturday Literacy Program, the Redevelopment Project, the YWCA Project, the Municipal Complex Project, and receipts from a New Jersey law firm and board of education (*id.* at Count 29 ¶ 3B). The labor expenses scheme involved false statements on IRS Form 1040 and Schedule C claiming Natural Care paid one individual compensation of $15,800, and another individual $11,255, for a total of $27,055 of labor expenses which were allegedly never actually paid. (*Id.* at Count 28 ¶ 6D.)

Finally, the Indictment alleges Defendant made false statements concerning a mortgage when he failed to report employment income from a job at a New Jersey community college on a form requesting mortgage assistance. (*Id.* at Counts 30 to 31 ¶¶ 6–7B.) Defendant requested mortgage relief due to his mortgage having fallen into substantial arrears as of February 11, 2014. (*Id.* ¶ 5.) Defendant proceeded to complete various forms requesting modification of his mortgage loan, each of which required him, under penalty of perjury, to report all income he received at the time of filling out the form. (*Id.* ¶¶ 6–9.) Defendant did not, however, report his income from the New Jersey community college on these forms. (*Id.* ¶ 6.) Relying on Defendant's representations, the bank holding the mortgage loan forgave approximately $95,590.81 of Defendant's mortgage debt and took the property out of foreclosure. (*Id.* ¶¶ 10A–B.)

**B.      Procedural History**

The Government filed an indictment against Defendant on July 8, 2020 (ECF No. 1) and a superseding indictment on September 29, 2020. (ECF No. 14.) Defendant was arraigned on October 13, 2020. (ECF No. 17.) Defendant filed the present pre-trial motions on May 1, 2023. (ECF No. 64.) The Government filed an opposition on May 22, 2023. (ECF No. 66.)

### III.   MOTION I

#### A.   Legal Standard

Under Rule 7(f) of the Federal Rules of Criminal Procedure, a court may order the Government to produce a bill of particulars. Fed. R. Crim. P. 7(f); *see also United States v. Coburn*, 439 F. Supp. 3d 361, 382 (D.N.J. 2020). Under Federal Rule of Criminal Procedure 7(c), the Court will examine the Indictment to determine if it is a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c); *see also United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012). A court will exercise its discretion to order a bill of particulars when "an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *Coburn*, 439 F. Supp. 3d at 382 (quoting *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989)). A bill of particulars is not intended to be a general discovery device but should issue only "'when the indictment itself is too vague and indefinite' to fulfill the essential purposes of [Federal Rule of Criminal Procedure] 7(c)." *Id.* (quoting *United States v. DePaoli*, 41 F. App'x 543, 546 (3d Cir. 2002)).

The Court generally determines the dates for disclosure of Rule 404(b) and Jencks Act materials after a final pre-trial conference between the parties. *See* Exhibit 7 to the District of New Jersey's Standing Order 15-2 – Criminal Trial Scheduling & Discovery. Defendants are not legally entitled to pre-trial disclosure of Jencks Act material. *See United States v. Tejada*, Crim. No. 12-312, 2013 WL 3786299, at *5–6 (D.N.J. July 17, 2013); *United States v. Miller*, Crim. No. 15-202, 2016 WL 1408102, at *4 (D.N.J. Apr. 11, 2016); *United States v. Tilton*, Crim. No. 20-30, 2020 WL 4188128, at *2–3 (D.N.J. July 21, 2020). For Rule 404(b) evidence, the Government must provide "reasonable notice" to the defendant, which courts have defined as seven to ten days

before jury selection for trial. *See Tilton*, 2020 WL 4188128, at *3; *Tejada,* 2013 WL 3786299, at *6 (ordering disclosure of Rule 404(b) evidence "not less than ten (10) calendar days prior to the date of trial"); *United States v. Rodriguez*, Crim. No. 20-01064, 2022 WL 1058380, at *7 (D.N.J. Apr. 8, 2022) (ordering disclosure of Rule 404(b) evidence "one week prior to the trial start date in this matter").

In evaluating requests for the identification of unindicted co-conspirators in a bill of particulars, the Court considers factors such as

> (i) the number of co-conspirators; (ii) the duration and breadth of the alleged conspiracy; (iii) whether the Government otherwise has provided adequate notice of the particulars; (iv) the volume of pre-trial discovery; (v) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (vi) the potential harm to the Government investigation.

*United States v. Joseph*, Crim. No. 02-1589, 2003 WL 22019427, at *2 (S.D.N.Y. Aug. 26, 2003). The Defendant must show that knowledge of the identities of the alleged co-conspirators is necessary for his trial preparation. *See United States v. MacFarlane*, 759 F. Supp. 1163, 1169–70 (W.D. Pa. 1991); *United States v. Sterritt*, Crim. No. 21-193, 2023 WL 4140269, at *5 (E.D.N.Y. June 22, 2023) ("Like other defense requests for particularized information, including whether the government should be ordered to disclose the identities of co-conspirators, the court considers 'whether the names of unindicted coconspirators are necessary to prepare a defense and avoid surprise.'" (quoting *United States v. Solomonyan*, 452 F. Supp. 2d 334, 349 (S.D.N.Y. 2006))); *United States v. Amendolara*, Crim. No. 01-694, 2002 WL 31368279, at *6 (S.D.N.Y. Oct. 21, 2002) ("Defendant . . . has not made the requisite showing of need to warrant a Court Order directing the Government to disclose the identity of unindicted co-conspirators."). In general, "a bill of particulars is rarely the proper vehicle for obtaining the identities of unindicted co-conspirators" as it "amounts to a plea for discovery outside the carefully crafted discovery rules

delineated by Congress and the Supreme Court, with the added tactical benefit of committing the government to specific factual positions before it has developed its case-in-chief or, in some cases, completed its investigation." *United States v. Concord Mgmt. & Consulting LLC*, 385 F. Supp. 3d 69, 75 (D.D.C. 2019).

### B. Decision

Defendant argues the Indictment does not provide him enough information on the charges to allow him to effectively prepare his defense and avoid surprise at trial. (ECF No. 64 at 3.) Specifically, he asserts Count 1 of the Indictment, as it pertains to the Saturday Literacy Program scheme, does not provide information establishing how Defendant received a kickback, or to whom Defendant ordered a portion of the kickback to be paid. (*Id.*) He also submits Count 1 fails to detail specific acts showing how Defendant used his influence in the Redevelopment Project scheme and fails to specifically allege when Defendant received a kickback from Ore. (*Id.*) Further, Defendant contends Count 14 fails to allege what specific favorable treatment Defendant gave to Zahore. (*Id.* at 3–4.) Defendant argues that without more specific information, his counsel is unable to adequately investigate the charges and mount a defense prior to trial. (*Id.* at 4–5.)

Defendant also asks the Court to order the Government to disclose all Rule 404(b), uncharged criminal acts, and unindicted co-conspirators immediately to prevent future undue prejudice to Defendant, avoid surprise, promote a fair trial, and provide the Defendant with more information about the offenses charged. (*Id.* at 5–7.)

The Government argues the Indictment provides sufficient detail about the charges, with each count alleged in multiple paragraphs and subparagraphs that elaborate on specific actions taken in furtherance of the schemes. (ECF No. 66 at 9.) Specifically, the Government notes the Saturday Literacy Program scheme is detailed in 27 paragraphs and subparagraphs discussing

various dates, invoices, contracts, and other actions, and the Redevelopment Project Scheme is alleged in 12 paragraphs and subparagraphs addressing specific steps Defendant took, including details concerning Ore's role and kickbacks associated with his services. (*Id.* at 10–12.) The Government also asserts Count 14 of the Indictment provides specific information on Defendant's relationship with Zahore, including "dates, text messages, and other communications among Defendant, Zahore, and a senior official of the Orange Police Department regarding how Zahore was awarded the $350,000 contract" and subsequent text messages where Defendant advised Zahore how to conceal the scheme. (*Id.* at 12.) The Government submits Defendant is attempting to use a bill of particulars as an improper attempt at obtaining discovery of specific facts and transactions. (*Id.* at 12–13.)

As to Defendant's other requests for immediate disclosure of Rule 404(b), uncharged criminal acts, and unindicted co-conspirators, the Government argues these requests are premature, and commits to working with defense counsel to identify mutually agreeable dates for disclosure at the appropriate time. (*Id.* at 13.)

Here, sufficient detail is included in the Indictment to allow Defendant to prepare his defense and avoid surprise at trial, as the Indictment details the functioning of various schemes involving Defendant, as well as Defendant's acts in furtherance of these schemes. Specifically, Count 1 of the Indictment alleges that, in furtherance of the Saturday Literacy Program scheme, Defendant created a false and fraudulent voucher in March 2015 for the payment of $32,000 to Urban Partners, supported by fraudulent documents including a sham contract between Urban Partners and the Library backdated to June 30, 2014, falsified statistical data providing the demographics of children attending the program, fraudulent invoices backdated to August 29, 2014, October 31, 2014, and November 28, 2014, and false Library checks to Urban Partners

backdated to September 5, 2014, November 3, 2014, and December 5, 2014. (Indictment at Count 1 ¶ 4B.) For the Redevelopment Project scheme, the Indictment states Defendant, on June 15, 2016, sought and received a $2,000 cash payment from Ore in exchange for his past official action and assistance in obtaining the contract for Urban Partners with the planning company. (*Id.* ¶ 5H.) Count 14 elaborates on the favorable treatment Defendant gave Zahore by noting he provided Zahore with a political contribution form (*id.* at Count 14 ¶ 5E), directed him to submit certain forms to the City to obtain the Municipal Complex project contract (*id.* ¶ 5G), spoke in support of the Municipal Complex project, awarded the contract to Zahore's company, JZ Nettech, at a city council meeting (*id.*), and facilitated invoices (*id.* ¶¶ 5L–P). These lengthy descriptions of the relevant offenses provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c); *see also Moyer*, 674 F.3d at 203; *United States v. Delahanty*, Crim. No. 21-872, 2022 WL 4237143, at *3–4 (D.N.J. Sept. 13, 2022) ("The Indictment here details the events underlying Defendants' deprivation of rights charge. That is, it provides the date and time of the incident, along with facts about the altercation.").

Defendant's request for more information regarding specific allegations in the Indictment is an improper use of a bill of particulars as a discovery vehicle, as a bill of particulars is not meant to provide the Defendant with specific evidence of the particular transactions alleged in the Indictment. *See Coburn*, 439 F. Supp. 3d at 382; *Delahanty*, 2022 WL 4237143, at *3 (holding that "a bill of particulars is not supposed to furnish to the defense 'each and every document that provides additional information about a criminal charge'" (quoting *N. Jersey Media Grp., Inc. v. United States*, 836 F.3d 421, 439 (3d Cir. 2016))); *United States v. Menendez*, Crim. No. 15-155, 2015 WL 5703240, at *1 (D.N.J. Sept. 28, 2015) ("A bill of particulars is not meant . . . to require the government to 'weave the information at its command into the warp of a fully integrated trial

theory for the benefit of the defendants.'" (quoting *United States v. Addonizio,* 451 F.2d 49, 64 (3d Cir.1971))). Rather, it is sufficient for the Indictment to provide a basic outline of the essential facts for each offense. Fed. R. Crim. P. 7(c); *see also Moyer,* 674 F.3d at 203; *Delahanty*, 2022 WL 4237143, at *3–4 ("The Indictment here details the events underlying Defendants' deprivation of rights charge. That is, it provides the date and time of the incident, along with facts about the altercation.").

Defendant is also not entitled to the disclosure of the identities of unindicted co-conspirators at this time because Defendant has made no showing of why the disclosure is necessary for his trial preparation, and the relatively low number of co-conspirators weighs against the need for disclosure. Defendant has not made any specific showing of why the disclosure of unindicted co-conspirators is necessary in this case, instead making general arguments that "the identification of co-conspirators is often required to avoid unfair surprise, promote a fair trial, assist a defendant in the preparation of his defense, and a [sic] provide a defendant with a clearer notice of the conspiracy charged." (ECF No. 64-1 at 7); *see also MacFarlane*, 759 F. Supp. at 1169–70; *Amendolara*, 2002 WL 31368279, at *6 ("Defendant [] has not made the requisite showing of need to warrant a Court Order directing the Government to disclose the identity of unindicted co-conspirators."). Because of the circumstances of this case, including its low number of unidentified co-conspirators, the short duration of the charged conduct, limited number of alleged conspiracies, and relatively detailed Indictment, the Court does not find the disclosure of unindicted co-conspirators is warranted at this time. *See Sterritt*, 2023 WL 4140269, at *6 (denying motion for bill of particulars specifying identities of unindicted co-conspirators where there was a relatively detailed indictment alleging only two closely related fraudulent schemes taking place over three years, and noting other cases where courts denied such motions where the number of

11

co-conspirators was limited and the conduct took place over a short period); *see also United States v. Shkreli*, Crim. No. 15-637, 2016 WL 8711065, at *6 (E.D.N.Y. Dec. 16, 2016) (denying motion for bill of particulars specifying identities of unindicted co-conspirators where "the Government provided 'significant detail to the defendants and [had] not unfairly overwhelmed [the defendants] with mountains of unorganized discovery'" (quoting *United States v. Kahale*, 789 F. Supp. 2d 359, 373 (E.D.N.Y. 2016))); *Amendolara*, 2002 WL 31368279, at *6 (denying motion for bill of particulars specifying identities of unindicted co-conspirators where "the Indictment allege[d] a conspiracy that spanned a period of only two years and allegedly involved Defendant . . . his three co-Defendants, and three unindicted co-conspirators").

Further, Defendant's request for the Government's immediate disclosure of Rule 404(b) and Jencks Act evidence is premature, as Defendant is not legally entitled to pre-trial disclosure of Jencks Act material, *see Tejada*, 2013 WL 3786299, at *5–6; *Miller*, 2016 WL 1408102, at *4; *Tilton*, 2020 WL 4188128, at *2–3,  and is only entitled to the disclosure of Rule 404(b) evidence seven to ten days before trial. *See Tilton*, 2020 WL 4188128, at *3; *Tejada,* 2013 WL 3786299, at *6 (ordering disclosure of Rule 404(b) evidence "not less than ten (10) calendar days prior to the date of trial"); *Rodriguez*, 2022 WL 1058380, at *7 (ordering disclosure of Rule 404(b) evidence "one week prior to the trial start date in this matter").

Accordingly, Defendant's motion for a bill of particulars is **DENIED**. To the extent Defendant's motion calls for a bill of particulars containing further substantive details on the charges, the motion is **DENIED WITH PREJUDICE**, and to the extent it requests the identification of unindicted co-conspirators, as well as Rule 404(b) and Jencks Act evidence, the motion is **DENIED WITHOUT PREJUDICE**.

## IV.    MOTION II

### A.    Legal Standard

The Court typically determines the dates for disclosure of Rule 404(b) evidence after a final pre-trial conference between the parties. *See* Exhibit 7 to the District of New Jersey's Standing Order 15-2 – Criminal Trial Scheduling & Discovery. The Government is required to provide "reasonable notice" of Rule 404(b) evidence to the defendant, which courts have defined as seven to ten days before jury selection for trial. *See Tilton*, 2020 WL 4188128, at *3; *Tejada,* 2013 WL 3786299, at *6 (ordering disclosure of Rule 404(b) evidence "not less than ten (10) calendar days prior to the date of trial"); *Rodriguez*, 2022 WL 1058380, at *7 (ordering disclosure of Rule 404(b) evidence "one week prior to the trial start date in this matter"). Pre-trial hearings regarding the admissibility of Rule 404(b) evidence are usually scheduled only after the Government has indicated its intention to use such evidence. *See United States v. Hassan-Gouda*, Crim. No. 07-258, 2013 WL 1501695, at *6 (D.N.J. Apr. 8, 2013); *United States v. Royster*, Crim. No. 21-00251, 2022 WL 2274477, at *4 (D.N.J. June 23, 2022); *United States v. Manning*, Crim. No. 14-326, 2015 WL 1310286, at *3 (D.N.J. Mar. 24, 2015).

### B.    Decision

Defendant requests the Court hold a hearing to determine the admissibility of any Rule 404(b) evidence which the Government may introduce at trial or use to cross-examine Defendant. (ECF No. 64-1 at 8.) The Government responds that Defendant's request is premature and states it will engage with defense counsel on a potential hearing at an appropriate time prior to trial. (ECF No. 66 at 14.)

Since the Court has found the disclosure of Rule 404(b) evidence at this time to be premature, Section III.B., *supra*, the Court also finds Defendant's request for a hearing on the

admissibility of such evidence to be premature. *See Hassan-Gouda*, 2013 WL 1501695, at *6; *Royster*, 2022 WL 2274477, at *4; *Manning*, 2015 WL 1310286, at *3. Defendant may renew his motion for a Rule 404(b) hearing after the Government discloses its Rule 404(b) evidence.

Accordingly, Defendant's motion for a hearing to determine the admissibility of the Government's Rule 404(b) evidence is **DENIED WITHOUT PREJUDICE**.

## V.      MOTION III

### A.      Legal Standard

The Court generally determines the dates for disclosure of *Giglio* materials after a final pre-trial conference between the parties. *See* Exhibit 7 to the District of New Jersey's Standing Order 15-2 – Criminal Trial Scheduling & Discovery. Defendants are not legally entitled to pre-trial disclosure of *Giglio* material. *See Tejada*, 2013 WL 3786299, at *5–6; *Miller*, 2016 WL 1408102, at *4; *Tilton*, 2020 WL 4188128, at *2–3.

### B.      Decision

Defendant requests copies of any conviction records, plea agreements, cooperation agreements, promises, understandings, or arrangements between the Government and any Government witness that may be called to testify, in order to allow Defendant to potentially impeach the testimony of these witnesses based on bias toward the Government. (ECF No. 64-1 at 8–11.) Defendant argues that ordering disclosure of this information before trial is "necessary to expedite the proceedings before this Court and promote judicial efficiency" and "any delay by the Government in providing this information would also unduly hinder the preparation of the defense and prejudice [Defendant's] substantial rights." (*Id.* at 10–11.)

The Government responds that Defendant's request for the pre-trial production of *Giglio* materials is premature and indicates that it will develop a disclosure schedule with Defendant's counsel at the appropriate time. (ECF No. 66 at 14–15.)

Defendant's request for the Government's pre-trial disclosure of *Giglio* evidence is premature, as Defendant is not legally entitled to pre-trial disclosure of *Giglio* material. *See Tejada*, 2013 WL 3786299, at *5–6; *Miller*, 2016 WL 1408102, at *4; *Tilton*, 2020 WL 4188128, at *2–3.

Accordingly, Defendant's motion for the pre-trial disclosure of *Giglio* material is **DENIED WITHOUT PREJUDICE.**

## VI.       MOTION IV

### A.       Legal Standard

The Government is generally expected to preserve rough notes of interviews pertaining to the case. *See United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994); *United States v. Vella*, 562 F.2d 275, 275–76 (3d Cir. 1977). Courts do not specifically order the Government to preserve rough notes when the Government otherwise indicates it is aware of its legal obligation to do so. *See Miller*, 2016 WL 1408102, at *5 (denying motion for Government to preserve rough notes as moot when Government indicated it was aware of obligation to preserve and disclose such notes); *United States v. Stiso*, Crim. No. 14-484, 2015 WL 5666137, at *9 (D.N.J. Sept. 25, 2015) (same); *Rodriguez*, 2022 WL 1058380, at *6 (denying motion for Government to preserve rough notes, as the court found it was sufficient for the Government to indicate its awareness of its obligation to preserve and disclose the notes).

Interview notes are subject to disclosure only to the extent they contain exculpatory *Brady* material, or Jencks Act material related to impeachment. *See United States v. Chrysanthopoulos*,

Crim. No. 12-672, 2013 WL 4833563, at *3–4 (D.N.J. Sept. 10, 2013); *United States v. Glenn*,
Crim. No. 15-99-1, 2018 WL 4091786, at *8–9 (E.D. Pa. Aug. 24, 2018). In order for a motion
for *in camera* review to succeed, Defendant must make a "colorable claim that 'the . . . rough notes
contained evidence favorable to him and material to his claim of innocence or to the applicable
punishment—and that such exculpatory evidence has not been included in any formal interview
report provided to defendant.'" *Glenn*, 2018 WL 4091786, at *9 (quoting *Ramos*, 27 F.3d at 71);
*see also Chrysanthopoulos*, 2013 WL 4833563, at *4 (denying motion for *in camera* review of
notes by finding defendant had not made a specific showing that the rough notes contain *Brady* or
Jencks Act material); *United States v. Armes*, Crim. No. 20-0377, 2021 WL 1737459, at *7 (W.D.
Pa. May 3, 2021) (noting that defendant could renew premature motion for *in camera* review of
rough notes at trial upon specific showing that such notes contained *Brady* or Jencks Act material).

### B.    Decision

Defendant requests the Court order the Government to preserve and retain rough notes of
meetings, conversations, or interviews during its investigation into this case, in order to allow the
Defendant adequate opportunity to cross-examine and impeach the Government's witnesses, and
to ensure the ability of the Court to make future decisions on the discoverability of the notes. (ECF
No. 64-1 at 11–12.) Defendant also requests the rough notes and draft reports be produced for *in
camera* review to determine whether they contain discoverable information. (*Id.* at 12–13.)

The Government indicates it is aware of its obligation to preserve rough notes and
represents that it has and will continue to comply with that requirement. (ECF No. 66 at 15.) The
Government also indicates it is aware of its obligation to disclose notes containing *Brady* and
Jencks Act material and argues there is no reason for the Court to conduct an *in camera* review of
the notes at this time. (*Id.* at 15–16.)

Here, the Government has stated that it is aware of its obligation to preserve rough notes of interviews, meaning there is no need for the Court to issue an order to this effect. (ECF No. 66 at 15); *see Miller*, 2016 WL 1408102, at *5 (denying motion for Government to preserve rough notes as moot when Government indicated it was aware of obligation to preserve and disclose such notes); *Stiso*, 2015 WL 5666137, at *9 (same); *Rodriguez*, 2022 WL 1058380, at *6 (denying motion for Government to preserve rough notes, as the court found it was sufficient for the Government to indicate its awareness of its obligation to preserve and disclose the notes). Defendant has also failed to make any colorable showing, at this stage, that any of the interview notes specifically contain *Brady* or Jencks Act material, meaning there is no basis for an *in camera* review of the notes at this stage. *Glenn*, 2018 WL 4091786, at *9; *see also Chrysanthopoulos*, 2013 WL 4833563, at *4 (denying motion for *in camera* review of notes by finding defendant had not made a specific showing that the rough notes contain *Brady* or Jencks Act material); *Armes*, 2021 WL 1737459, at *7 (noting that defendant could renew premature motion for *in camera* review of rough notes at trial upon specific showing that such notes contained *Brady* or Jencks Act material). In any case, the Government has indicated it is aware of its obligation to promptly disclose notes containing *Brady* or Jencks Act material. (ECF No. 66 at 15–16.)

Accordingly, Defendant's motion for the preservation and retention of rough notes, and for an *in camera* review of such notes for discoverable information, is **DENIED WITHOUT PREJUDICE**.

## VII.   MOTION V

### A.   Legal Standard

Testifying informants are treated the same as other witnesses and their identities are to be included in the Government's *Giglio* and Jencks Act disclosures. *United States v. Gatson*, Crim.

No. 13-705, 2014 WL 7182275, at *26 (D.N.J. Dec. 16, 2014) ("Testifying co-conspirators and confidential informants are treated no differently than other witnesses."); *United States v. Griffith*, 598 F. Supp. 3d 221, 240–41 (M.D. Pa. 2022) (noting the Government must eventually disclose impeachment material regarding testifying informants to a defendant); *United States v. Coles*, 511 F. Supp. 3d 566, 583–84 (M.D. Pa. 2021) (stating "we agree with [defendant] that he is entitled to any exculpatory or impeachment material relating to the government's jailhouse-informant witnesses"). In the case of non-testifying informants, the Defendant must show a "specific need for disclosure" of the identities of these informants, because, for instance, the information would be "essential to a fair determination of his guilt." *Gatson*, 2014 WL 7182275, at *26 (quoting *United States v. Johnson*, 302 F.3d 139, 149 (3d Cir. 2002)); *see also Tejada*, 2013 WL 3786299, at *7–8 ("It is well settled that '[a] defendant in a noncapital case does not have a right to discover a list of prospective Government witnesses.'" (quoting *United States v. Eisenberg*, 773 F. Supp. 662, 683 (D.N.J. 1991))); *Rodriguez*, 2022 WL 1058380, at *6 (denying defendant's motion to order disclosure of identity of confidential Government informant as "the identity of this informant is not 'essential to a fair determination of a cause'" (quoting *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957))).

## B.    Decision

Defendant requests the disclosure of the "real name, address and alias" of all informants involved in the investigation of this case. (ECF No. 64-1 at 13.) Defendant argues this information is important for testing the informants' credibility, and to allow Defendant to determine if he wishes to call any informants as witnesses. (*Id.*) Defendant asks for various disclosures regarding each informant, including Rule 404(b), 603, and 608 evidence, as well as information about addictions, mental illnesses, false statements, deception, and Government payments to the

informants. (*Id.* at 13–14.) The Government argues Defendant's request is premature, and it will disclose relevant materials for testifying witnesses after consultation with Defense counsel. (ECF No. 66 at 16.)

As previously noted in Section III.B., *supra*, Defendant is not entitled to pre-trial disclosure of *Giglio* or Jencks Act materials. S*ee Tejada*, 2013 WL 3786299, at *5–6; *Miller*, 2016 WL 1408102, at *4; *Tilton*, 2020 WL 4188128, at *2–3. Defendant has also failed to show a "specific need for [the] disclosure" of non-testifying informants, as he has presented no argument regarding any need for information about particular informants. *Gatson*, 2014 WL 7182275, at *26 (quoting *Johnson*, 302 F.3d at 149); *see also Tejada*, 2013 WL 3786299, at *7–8 ("It is well settled that '[a] defendant in a noncapital case does not have a right to discover a list of prospective Government witnesses.'" (quoting *Eisenberg*, 773 F. Supp. at 683)); *Rodriguez*, 2022 WL 1058380, at *6 (denying defendant's motion to order disclosure of identity of confidential Government informant as "the identity of this informant is not 'essential to a fair determination of a cause'" (quoting *Roviaro*, 353 U.S. at 60–61)).

Accordingly, Defendant's motion for the disclosure of the Government's informants is **DENIED WITHOUT PREJUDICE**.

## VIII.      MOTION VI

### A.      Legal Standard

Pre-trial hearings to determine the admissibility of co-conspirator statements are generally not required in the Third Circuit. *See Tejada*, 2013 WL 3786299, at *4 (holding "the Third Circuit has consistently upheld the district court's exercise of discretion in conditionally admitting co-conspirator statements at trial subject to subsequent presentation of evidence establishing the existence of a conspiracy"); *United States v. Abreu*, Crim. No. 20-00642, 2021 WL 3561247, at

*13 (D.N.J. Aug. 12, 2021) (holding that "the Third Circuit does not require district courts to hold a pre-trial hearing to determine the admissibility of coconspirator statements under Federal Rule of Evidence 801(d)(2)(E)"); *United States v. Savage*, Crim. Nos. 07–550–03, 07–550–04, 07–550–05, 07–550–06, 2012 WL 5866068, at *3 (E.D. Pa. Nov. 20, 2012) ("*James*[1] hearings are neither required, nor a procedure that is often used in the Third Circuit.").

### B.    Decision

Defendant requests a hearing to determine the admissibility of any potential hearsay statements by co-conspirators that may be used against him. (ECF No. 64-1 at 14.) The Government argues Defendant's request is premature and may be more appropriately addressed by a motion *in limine* closer to trial. (ECF No. 66 at 16.)

Here, Defendant has given no reason why a pre-trial hearing on the admissibility of co-conspirator statements is required. Such hearings are not generally required in the Third Circuit. *See Tejada*, 2013 WL 3786299, at *4; *Abreu*, 2021 WL 3561247, at *13; *Savage*, 2012 WL 5866068, at *3.

Accordingly, Defendant's motion for a pre-trial hearing on the admissibility of co-conspirator hearsay statements is **DENIED WITHOUT PREJUDICE**.

### IX.    MOTION VII

### A.    Legal Standard

Defendants are not entitled to the pre-trial disclosure of Jencks Act material, rather, such material only needs to be disclosed after a witness's direct examination. S*ee Tejada*, 2013 WL 3786299, at *5–6; *Miller*, 2016 WL 1408102, at *4; *Tilton*, 2020 WL 4188128, at *2–3.

---

[1] A *James* hearing "is a pretrial hearing to determine the existence of a conspiracy and the admissibility of any statements of alleged co-conspirators under Rule 801(d)(2)(E)." *Id.*

### B.      Decision

Defendant asks the Court to order the immediate disclosure of all Jencks Act material, despite Defendant not being entitled to such information until after the relevant witness's direct examination. (ECF No. 64-1 at 15.) Defendant argues that he cannot adequately prepare his defense until receiving every statement made by each witness, and any delay in producing these materials will disrupt trial proceedings and be contrary to judicial economy. (*Id.*)

The Government argues Defendant's motion is premature, as Defendant is not entitled to Jencks Act material until after a witness's direct examination. (ECF No. 66 at 16.) Nonetheless, the Government commits to voluntarily disclosing the Jencks Act material well in advance of trial. (*Id.* at 16–17.)

Here, the Government's commitment to voluntarily disclose Jencks Act material to Defendant in advance of trial is sufficient to address Defendant's concerns, particularly given that Defendant is not entitled to any pre-trial disclosure of such information. S*ee Tejada*, 2013 WL 3786299, at *5–6; *Miller*, 2016 WL 1408102, at *4; *Tilton*, 2020 WL 4188128, at *2–3.

Accordingly, Defendant's motion for the Government's immediate disclosure of all Jencks Act material is **DENIED WITHOUT PREJUDICE**.

### X.      MOTION VIII

### A.      Legal Standard

*Brady* material, which consists of evidence in the Government's possession that would tend to exculpate Defendant, must be disclosed "in time for its effective use at trial." *United States v. Jafari*, Crim. No. 12-475, 2012 WL 5335242, at *2 (D.N.J. Oct. 26, 2012) (quoting *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984)); *see also United States v. Johnson*, 218 F. Supp. 3d 454, 459 (W.D. Pa. 2016) (quoting *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983)); *United*

*States v. Blackwell*, 954 F. Supp. 944, 968 (D.N.J. 1997) (quoting *Higgs*, 713 F.2d at 44). Although the timely disclosure of *Brady* material is judged on a case-by-case basis, courts have held disclosure of one to two weeks before trial to be sufficient. *See Johnson*, 2012 WL 5335242, at *2 (ordering Government to produce *Brady* material no later than ten days before trial); *United States v. Thompson*, Crim. No. 17-00094, 2019 WL 102413, at *8 (D.N.J. Jan. 4, 2019) (declining to make further order on discovery based on Government's voluntary commitment to disclose *Brady* evidence at least seven days before trial); *United States v. Beech*, 307 F.R.D. 437, 442–43 (W.D. Pa. 2015) (ordering Government to disclose *Brady* material no later than ten business days before trial). Additionally, Defendants are not legally entitled to pre-trial disclosure of *Giglio* material. *See Tejada*, 2013 WL 3786299, at *5–6; *Miller*, 2016 WL 1408102, at *4; *Tilton*, 2020 WL 4188128, at *2–3.

**B.    Decision**

Defendant requests the Government produce all *Brady* and *Giglio* material immediately, arguing immediate disclosure in this case is appropriate as the evidence contains "thousands of wiretap, audio, video, and other recordings, along with thousands of documents, photographs, and items of physical evidence." (ECF No. 64-1 at 17–20.) Defendant argues the Court should use its discretion to order early production of *Brady* and *Giglio* materials. (*Id.* at 20.)

The Government argues it is aware of its continuing obligation to disclose *Brady* materials and will agree on the disclosure of *Giglio* materials at an appropriate time closer to trial. (ECF No. 66 at 17.) The Government also notes that courts have found disclosure of *Brady* and *Giglio* materials more than two weeks before trial to be more than sufficient. (*Id.* at 17–18.) The Government indicates that it will voluntarily disclose *Brady* and *Giglio* material in advance of trial. (*Id.* at 18.)

22

Here, the Government's commitment to pre-trial disclosure of *Brady* material is sufficient at this stage of the case. Courts have routinely declined to grant immediate disclosure of *Brady* material in instances where the Government has already committed to the timely exchange of such evidence. *See United States v. Padgett*, Crim. No. 21-521, 2023 WL 2424162, at *7 (D.N.J. Mar. 9, 2023) (denying motion for immediate disclosure of *Brady* material as Government had indicated it was aware of, and would abide by, its obligations under *Brady*); *United States v. Wilson*, Crim. No. 15-00521, 2016 WL 3647327, at *7 (D.N.J. July 6, 2016) (denying motion for immediate disclosure of *Brady* material based on Government's acknowledgment of *Brady* obligations and lack of evidence of Government's failure to comply with such obligation); *United States v. Williams*, Crim. No. 19-184, 2021 WL 2024997, at *5 (D.N.J. May 21, 2021) (denying motion for immediate disclosure of *Brady* material based on Government's acknowledgment of its disclosure and preservation obligations). Further, Defendant is not legally entitled to pre-trial disclosure of *Giglio* material. *See Tejada*, 2013 WL 3786299, at *5–6; *Miller*, 2016 WL 1408102, at *4; *Tilton*, 2020 WL 4188128, at *2–3.

Accordingly, Defendant's motion for immediate disclosure of *Brady* and *Giglio* material is **DENIED WITHOUT PREJUDICE**.

## XI.   Motion IX

### A.   Legal Standard

A court will strike surplusage from an indictment pursuant to Federal Rule of Criminal Procedure 7(d) when it finds the language is both irrelevant and prejudicial. Fed. R. Crim. P. 7(d); *see United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006); *United States v. Weiss*, 588 F. Supp. 3d 622, 632 (E.D. Pa. 2022); *United States v. Lalley*, Crim. No. 10-326, 2010 WL 3946659, at *3 (D.N.J. Oct. 5, 2010) (quoting *Hedgepeth*, 434 F.3d at 612). Courts will find information in

an indictment to be relevant as long as "it is in a general sense relevant to the overall scheme charged in the indictment." *Lalley*, 2010 WL 3946659, at *3 (quoting *United States v. Giampa*, 904 F. Supp. 235, 271–72 (D.N.J.1995)); *see also United States v. Goldner,* Crim. No. 21-229, 2021 WL 4776340, at *3 (quoting *United States v. Caruso*, 948 F. Supp. 382, 392 (D.N.J. 1996)); *United States v. Holzwanger*, Crim. No. 10-00714, 2011 WL 1741920, at *7 (D.N.J. May 4, 2011) (quoting *Lalley*, 2010 WL 3946659, at *3). A court will only strike surplusage in rare cases. *See Holzwanger*, 2011 WL 1741920, at *7; *United States v. Bortnick*, Crim. No. 03-0414, 2004 WL 2861868, at *3 (E.D. Pa. Nov. 30, 2004).

### B.    Decision

Defendant argues the words "plagiarism scheme" should be struck from Counts 18 to 25 of the Indictment for two reasons. Firstly, Defendant asserts the allegation that Defendant was involved in a plagiarism scheme is irrelevant to the elements of the crimes charged. (ECF No. 64-1 at 22.) Secondly, Defendant claims the presence of the words "plagiarism scheme" will create a "trial within a trial," as Defendant intends to contest the existence of any plagiarism scheme, which Defendant argues will distract from the essential elements of the charged offenses. (*Id.*)

The Government argues the allegation that Defendant was engaged in a plagiarism scheme is relevant to the charged offenses, as it provides the "context, background, and basis of those counts." (ECF No. 66 at 18–19.) The Government asserts the contested language is "relevant in a general sense to the overall scheme alleged in the indictment," as it provides context as to why Defendant arranged for the City to pay Isaac Newton (the third party allegedly providing Defendant with plagiarized academic material). (*Id.* at 19.) The Government also contends that Defendant's potential challenge to facts alleged in the Indictment does not constitute grounds to strike parts of the Indictment as surplusage. (*Id.* at 20.)

24

Here, the Court finds the words "plagiarism scheme" should be maintained in Counts 18 to 25 in the Indictment, as the allegation that Defendant was engaged in a plagiarism scheme is sufficiently relevant to the offenses charged in Counts 18 to 25. The allegation provides context and motive for why Defendant allegedly arranged fraudulent payments from the City to Isaac Newton. The language provides important information regarding the benefit Defendant was seeking from the overall scheme. Therefore, since the words "plagiarism scheme" are "relevant in a general sense to the overall scheme alleged in the indictment," the Court will maintain this language in the Indictment. *Lalley*, 2010 WL 3946659, at *3 (quoting *United States v. Giampa*, 904 F. Supp. 235, 271–72 (D.N.J.1995)); *see also Goldner,* 2021 WL 4776340, at *3 (quoting *Caruso*, 948 F. Supp. at 392); *Holzwanger*, 2011 WL 1741920, at *7 (quoting *Lalley*, 2010 WL 3946659, at *3).

Accordingly, Defendant's motion to strike the words "plagiarism scheme" from Counts 18 to 25 of the Indictment is **DENIED WITH PREJUDICE**.

## XII.      MOTION X

### A.      Legal Standard

Multiple counts may be joined in an indictment under Federal Rule of Criminal Procedure 8(a) if those counts "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a); *see also United States v. Wise*, Crim. No. 20-102, 2021 WL 5016013, at *7 (D.N.J. Oct. 28, 2021). Offenses are considered to be of a "similar" character when they are "[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness." *Id.* (quoting *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002)). In order to promote judicial and prosecutorial economy, *Wise*, 2021 WL 5016013, at *7, Rule 8(a) is "construed

broadly in favor of initial joinder of offenses [] of the same or similar character[.]" *United States v. Lee*, Crim. No. 14-0254, 2015 WL 12631238, at *1 (M.D. Pa. June 2, 2015). "A court addressing the propriety of joinder may consider the contents of the indictment, representations set forth in pre-trial filings, and any offers of proof submitted by the government." *Wise*, 2021 WL 5016013, at *7.

Separately, counts in an indictment may also be severed under Federal Rule of Criminal Procedure 14 if a defendant demonstrates the inclusion of the counts will lead to "clear and substantial prejudice resulting in a manifestly unfair trial." *See United States v. Dedeaux*, Crim. No. 13-136, 2013 WL 5935173, at *2 (D.N.J. Nov. 1, 2013) (quoting *United States v. Hagins*, 452 F. App'x 141, 146 (3d Cir. 2011), *cert. denied*, 133 S. Ct. 255, 184 L.Ed.2d 137 (2012)). Mere allegations of prejudice are insufficient, *Dedeaux*, 2013 WL 5935173, at *2, rather, a movant must demonstrate "clear and substantial prejudice." *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005). Severance is not required even if a defendant establishes that severance will improve their chances of acquittal. *United States v. Hadaway*, 466 F. App'x 154, 157 (3d Cir. 2012). Overall, in deciding whether to sever, "a district court must balance 'possible prejudice to the defendant against interests of judicial economy.'" *Dedeaux*, 2013 WL 5935173, at *2.

### B.    Decision

Defendant submits Counts 28, 30, and 31 of the Indictment should be severed under Rule 8(a) for being insufficiently related to Counts 1 to 27. (ECF No. 64-1 at 27–29.) Specifically, Defendant argues the mortgage fraud alleged in Counts 30 and 31 is not of the "same or similar character" as Counts 1 to 27, as the conduct alleged in Counts 30 and 31 was in Defendant's personal capacity and had no relation to his role as Business Administrator for the City. (*Id.* at 27.) Defendant also asserts the tax fraud alleged in Count 28 is not of the "same or similar character"

as Counts 1 to 27, as the Count alleges fraud related to tax filings for Defendant's personal janitorial services business. (*Id.* at 27–28.) Additionally, Defendant argues that each of the eight schemes listed in the Indictment should be severed into separate trials, as evidence relating to one scheme would not be admissible under Rule 404(b) in a trial for another scheme, and trying the schemes together would be unfairly cumulative and confusing to the jury. (*Id.* at 31–33.) Defendant further claims that severance would be in the interest of judicial economy and reduce the cumulative evidentiary burden on both counsel and the jury. (*Id.* at 32–33.)

The Government asserts Counts 30 and 31 are properly joined under Rule 8(a) because: (1) they are of a similar character to the other counts in the Indictment, with all counts alleging some type of fraud; (2) the conduct charged in Counts 30 and 31 is temporally proximate to the other conduct alleged; and (3) Counts 30 and 31 help provide context and motive for the other offenses alleged in the Indictment, as they show Defendant was in financial difficulty, which would help explain his other alleged conduct. (ECF No. 66 at 27–30.) On Counts 28 and 29, the Government contends the two counts must be tried together as they stem from representations made on the same tax return, meaning the Government will have to prove both counts together, and conviction on both counts would be necessary for full restitution of the victim. (*Id.* at 25–27.) The Government also argues the counts in the Indictment should not be severed under Rule 14, as: (1) there is no reason to believe a jury would be unable to compartmentalize and segregate the relevant evidence, particularly because the Court could give limiting instructions; and (2) whether evidence relating to one scheme may be admissible in the trial of another scheme under Rule 404(b) is not dispositive, and in any case Defendant's participation in one scheme might be used to show motive or knowledge for another scheme.  (*Id.* at 30–37.)

27

Here, Counts 28, 30, and 31 are of a sufficiently similar character as the other counts in the Indictment to be joined under Rule 8(a), because all the counts in the Indictment allege some form of fraud. Courts have consistently held that offenses of a similar nature may be joined in an indictment, even if the facts underlying each offense are separate. *See Wise*, 2021 WL 5016013, at *8 (finding that charges could be joined as "[t]he acts are of a similar character, given that they all involve the sexual exploitation of minors"); *United States v. Hartley*, Crim. No. 20-269, 2022 WL 1019225, at *3–4 (M.D. Pa. Apr. 5, 2022) (finding that joinder of charges related to three fraudulent schemes was proper despite different agencies being the target of each scheme, because the schemes shared a general likeness, and the proceeds of each scheme were deposited in the same bank account); *United States v. Kelley*, Crim. No. 19-483, 2021 WL 601502, at *3–4 (E.D. Pa. Feb. 16, 2021) (finding offenses properly joined because they were all of a "'similar character' as they all involve [Defendant's] alleged schemes run through his business for his personal enrichment" and noting different types of fraud against different victims may be joined in a single indictment). Here, each scheme generally alleges some sort of fraud or false statements (*see* Indictment at Counts 1–8, 14–15, 17–24, 26–31), with the only distinctions between the schemes being the victims and circumstances of the fraud. The Saturday Literacy Program, Redevelopment Project, YWCA Project (*id.* at Counts 1–8), Municipal Complex Project (*id.* at Counts 14–15), Plagiarism (*id.* at Counts 17–24), and Graduate School Payments (*id.* at Counts 26–27), schemes are based on fraud against the City in Defendant's role as Orange Business Administrator. The other counts allege fraud conducted in different circumstances, with the tax fraud scheme alleging fraud against the United States Internal Revenue Service ("IRS") stemming from Defendant's role as a business owner (*id.* at Counts 28–29) and the mortgage fraud scheme (*id.* at Counts 30–31) alleging fraud against a bank in Defendant's personal capacity. Because all the schemes allege

some sort of fraud or false statements, the Court finds the schemes to be of a "similar character," and appropriately joined on this basis.

Counts 28, 30, and 31 are also properly joined because of a "transactional nexus" between the schemes alleged in these counts and other schemes alleged in the Indictment. Rule 8(a) allows for joinder of offenses when there is a "transactional nexus" between the offenses being joined "based on a physical, temporal, or logical connection between offenses, such as an interrelation of facts or evidence." *United States v. Christy*, Crim. No. 18-223, 2019 WL 636981, at *4 (M.D. Pa. Feb. 14, 2019); *see also United States v. Adens*, Crim. No. 12-616, 2015 WL 894205, at *1 (E.D. Pa. Feb. 27, 2015) (providing that charges may be joined based on a "transactional nexus," or a basic logical relationship between the charges); *United States v. Saferstein*, Crim. No. 07-557, 2009 WL 1046128, at *4 (E.D. Pa. Apr. 17, 2009) (holding there was a sufficient transactional nexus between fraud and perjury charges as "[w]ithout the alleged activities leading to the charges of wire and mail fraud against [Defendant] there would be neither circumstance nor motivation to conspire to commit perjury"). Here, Count 28 clearly shares a transactional nexus with Count 29 (which Defendant concedes is properly joined under Rule 8(a) (ECF No. 64-1 at 28–29)), as both charges are based on the same tax return filed with the IRS. (Indictment at Count 28 ¶¶ 5A–C, Count 29 ¶¶ 2–4.) The Government also indicates that it will argue Counts 30 and 31 "explain Defendant's motive in committing the rest of the offenses charged in the Indictment," as these counts allegedly show Defendant was in financial difficulty, which may have led to other efforts to financially benefit himself. (ECF No. 66 at 30.) The Government also notes the temporal proximity between Counts 30 and 31 and the other offenses in the Indictment, with the alleged conduct occurring in 2014, and the loan forgiveness being applied between July 2015 and July 2017. (*Id.* at 29–30.) The conduct in Counts 30 and 31 therefore overlaps with the conduct alleged

in the rest of the Indictment, which takes place from approximately January 2015 to June 2016. (*Id.* at 30.) Accordingly, the Government has clearly asserted a logical and temporal connection between the mortgage fraud scheme alleged in Counts 30 and 31 and the other offenses joined in the Indictment, thereby creating a sufficient transactional nexus between these offenses and the rest of the Indictment for Rule 8(a). *See Saferstein*, 2009 WL 1046128, at *4 (permitting Rule 8(a) joinder of charges of wire and mail fraud, as well as conspiracy to commit perjury, because the wire and mail fraud charges provided "circumstance" and "motive" leading to the conspiracy); *United States v. Kubini*, 19 F. Supp. 3d 579, 629–30 (W.D. Pa. 2014) (permitting joinder of wire and bank fraud charges with charges for non-filing of tax returns in part because "the Government contends that [Defendant's] motive for committing both the fraud and tax crimes was his poor financial condition during 2006–2009"); *Christy*, 2019 WL 636981, at *4 (allowing for Rule 8(a) joinder "based on a physical, temporal, or logical connection between offenses, such as an interrelation of facts or evidence"); *United States v. Hill*, Crim. No. 17-00276, 2019 WL 2110573, at *2 (M.D. Pa. May 14, 2019) (a "transactional nexus can be based on a physical, temporal, or logical connection between offenses, such as an interrelation of facts or evidence").

The Court also finds Defendant is not unduly prejudiced by the joining of the different schemes in the Indictment, because Defendant has presented no basis to find the jury would be unable to compartmentalize the evidence in the case despite the assistance of jury instructions. Juries are presumed to follow cautionary instructions to segregate evidence on different counts, particularly where the evidence is not "overly technical or scientific." *Kelley*, 2021 WL 601502, at *4–5; *see also United States v. Delle Donna*,  552 F. Supp. 2d 475, 496–97 (D.N.J. 2008) (noting that the most effective tool against jury confusion is cautionary instruction from the court, and holding the evidence in the case was not so complex as to create a likelihood of confusion among

the jury); *cf. United States v. Peperno*, Crim. No. 21-287, 2022 WL 2233053, at *4 (M.D. Pa. June 21, 2022) (noting that "[e]ven when the risk of prejudice is high, less drastic measures than severance (such as limiting instructions) 'often will suffice to cure any risk of prejudice'" (quoting *Adens*, 2015 WL 894205, at *2)). In this case, there is no technical or scientific evidence for the jury to scrutinize, and Defendant has not presented any compelling reasons to believe the fraud schemes alleged in the Indictment are unusually complex compared to other cases routinely handled by juries. Therefore, the Court is confident that a jury, with the aid of the Court's instruction, will be able to appropriately compartmentalize evidence relating to different counts in the Indictment.

The potential admissibility of Rule 404(b) evidence regarding one scheme in a separate trial on the other schemes also weighs in favor of the joinder of the counts. Among other factors, Courts will consider whether evidence for one charge is admissible in a trial for the other charges when evaluating whether to sever counts under Rule 14(a). *See Christy*, 2019 WL 636981, at *4; *United States v. Fumo*, Crim. No. 06-319, 2008 WL 109667, at *3 (E.D. Pa. Jan. 9, 2008); *United States v. Harris*, Crim. No. 07-355, 2008 WL 3545827, at *14 (W.D. Pa. Aug. 12, 2008) ("'In cases where 'evidence of each of the joined offenses would be admissible in a separate trial for the other', concerns about cumulation of evidence and inference of a criminal disposition are 'largely absent.'" (quoting *United States v. McNeill*, Crim. No. 06-373, 2007 WL 2234516, at *3 (W.D. Pa. Aug. 2, 2007))). It is well established that evidence of one fraudulent scheme by a defendant may be admitted as Rule 404(b) evidence in a trial for another fraudulent scheme against the same defendant to prove "motive, opportunity, intent, absence of mistake, or the lack of accident." *Hartley*, 2022 WL 1019225, at *7; *see also Peperno*, 2022 WL 2233053, at *4 (noting "evidence of [defendant's] false and perjurious statements is proper Rule 404(b) evidence of his motive to

31

commit the money laundering offenses, as both activities were undertaken to shield his liquid assets from enforcement of his restitution obligation"); *cf. United States v. Suggs*, Crim. No. 19-00629, 2022 WL 2168356, at *3–4 (E.D. Pa. June 16, 2022) (finding evidence of one robbery could be used to prove motive, opportunity, knowledge, and lack of mistake regarding a subsequent robbery). Here, the Court finds it likely that evidence relating to one of the fraudulent schemes in the Indictment could be introduced under Rule 404(b) to prove Defendant's "motive, opportunity, intent, absence of mistake, or . . . lack of accident" in a trial for another of the fraudulent schemes. The Court therefore finds joinder is proper under this basis as well.

Accordingly, Defendant's motion to sever the Indictment is **DENIED WITH PREJUDICE**.

XIII.      MOTION XI

A.      **Legal Standard**

A motion to dismiss counts in an indictment for being barred by the relevant statute of limitations may be brought under Federal Rule of Criminal Procedure 12(b), which allows for a motion to dismiss based on the Court's lack of jurisdiction. Fed. R. Crim. P. 12(b); *see United States v. Weigand*, Crim. Nos. 17-00556, 20-00248, 2021 WL 1424728, at *3 (E.D. Pa. Apr. 15, 2021). When a defendant raises a statute of limitations defense, the Government bears the burden of the showing the offense was timely charged. *Id.* In evaluating a Rule 12 motion to dismiss, "'a district court must accept as true the factual allegations set forth in the indictment' to determine whether 'a jury could find that the defendant committed the offense for which he was charged.'" *United States v. Smukler*, 330 F. Supp. 3d 1050, 1054 (E.D. Pa. 2018) (quoting *United States v. Huet*, 665 F.3d 588, 595–96 (3d Cir. 2012). A "superseding indictment returned while the original indictment is validly pending is not barred by the statute of limitations if it does not expand the

charges made in the initial indictment." *United States v. Brassington*, Crim. No. 09-45, 2010 WL 3982036, at *9 (D.N.J. Oct. 8, 2010) (quoting *United States v. Friedman*, 649 F.2d 199, 204 (3d Cir. 1981)).

### B.      Decision

Defendant argues Counts 2 and 3 of the Indictment should be dismissed based on application of the general statute of limitations in 18 U.S.C. § 3282. (ECF No. 64-1 at 33.) Because the initial indictment was brought on July 8, 2020, and the general statute of limitations is five years, the earliest the charged conduct could occur would be July 7, 2015. (*Id.*) Defendant asserts Count 2 is time-barred because it pertains to a March 30, 2015 voucher and phone documents, and Count 3 is time-barred because it deals with a May 28, 2015 voucher and alleged phony documents. (*Id.*)

The Government claims Counts 2 and 3 are not time-barred due to Defendant's previous plea agreement which tolls the statute of limitations. (ECF No. 66 at 37.) The Government submits the March 9, 2020 plea agreement specifies that, in the event a guilty plea is not entered "[Defendant] agrees that any dismissed charges and any other charges that are not time-barred by the applicable statute of limitations on the date of this agreement is signed by [Defendant] may be commenced against him, notwithstanding the expiration of the limitations period after [Defendant] signs the agreement." (*Id.*) The Government notes Defendant formally withdrew from the plea agreement on June 23, 2020, meaning approximately 106 days were tolled between March 9, 2020, and June 23, 2020. (*Id.* at 38.) The Government argues this would result in only conduct prior to March 24, 2015 being barred by the statute of limitations, thereby entailing that Count 2, which alleges conduct on March 30, 2020, and Count 3, which deals with conduct on May 28, 2020, are not time-barred. (*Id.*)

Here, the statute of limitations does not bar Counts 2 and 3 of the Indictment, as the March 9, 2020 plea agreement tolled the statute of limitations such that the alleged conduct in Counts 2 and 3 is not time-barred. Counts 2 and 3 are brought under 18 U.S.C. §§ 1343, 1346, and 2. (Indictment at Counts 2–8 ¶ 3.) These provisions are governed by the general statute of limitations under 18 U.S.C. § 3282, which requires an indictment be brought five years after the alleged offense was committed.[2] It is well established that a Defendant may waive a relevant statute of limitations through a plea agreement. *See United States v. Figueroa*, Crim. No. 14-00672, 2021 WL 1661202, at *3 (D.N.J. Apr. 28, 2021) (noting it is "possible for a defendant knowingly and intelligently to waive the statute of limitations, thus sanctioning a later indictment which, absent such a waiver, would be untimely" (quoting *United States v. Levine*, 658 F.2d 113, 120–21 (3d Cir. 1981))); *United States v. Gilchrist*, 215 F.3d 333, 339 (3d Cir. 2000) (encouraging the Government to include in "plea agreements a clause that requires the defendant to waive the statute of limitations defense as to dismissed counts if the defendant, after the period of limitations has expired on the original charges, withdraws or challenges the guilty plea"); *United States v. Wilson*, 26 F.3d 142, 155 (D.C. Cir. 1994) (holding that "a criminal statute of limitations is not jurisdictional in nature and therefore can be waived"). Here, Defendant explicitly agreed to allow any charges that were not time-barred as of the date of the March 9, 2020 plea agreement to be brought against him should he withdraw from the agreement, notwithstanding any statute of limitations. (ECF No. 66-1 at 2.) Defendant withdrew from the plea agreement on June 23, 2020. (ECF No. 66-2 at 2.) Therefore, the statute of limitations was tolled between March 9, 2020 and

---

[2] 18 U.S.C. § 3293(2) prescribes a separate statute of limitations for 18 U.S.C. § 1343 when the offense affects a financial institution. Since no financial institution is alleged to have been affected by Counts 2 and 3, this provision does not apply, and 18 U.S.C. § 3282 is the applicable statute of limitations.

June 23, 2020, meaning that only conduct prior to March 24, 2015 would be time-barred based on the July 8, 2020 initial indictment. Since Count 2 alleges conduct on March 30, 2020 and Count 3 alleges conduct on May 28, 2020, these counts are not time-barred.

Accordingly, Defendant's motion to dismiss Counts 2 and 3 of the Indictment for being barred by the statute of limitations is **DENIED WITH PREJUDICE**.

**XIV.    CONCLUSION**

For the reasons set forth above, Defendant's pre-trial motions (ECF No. 64) are **DENIED**. Motions I, to the extent it requests the identification of unindicted co-conspirators, as well as Rule 404(b) and Jencks Act evidence, II, III, IV, V, VI, VII, and VIII are **DENIED WITHOUT PREJUDICE**. Motions I, to the extent it calls for a bill of particulars containing further substantive details on the charges, IX, X, and XI are **DENIED WITH PREJUDICE.**

Date: April 15, 2024                           _/s/ Brian R. Martinotti_____
                                               **HON. BRIAN R. MARTINOTTI**
                                               **UNITED STATES DISTRICT JUDGE**